CASE 81.—ACTION BY THE THIRD NATIONAL BANK OF
LOUISVILLE, KENTUCKY, AGAINST ABBIE M.
TIERNEY ON A PROMISSORY NOTE.—May 8.

# Third Nat. Bank v. Tierney

Appeal from Jefferson Circuit Court; (Chancery
Branch, Second Division).

SAMNEL B. KIRBY, Judge.

Judgment for defendant, plaintiff appeals — Affirmed.

1. Husband and Wife—Disabilities and Privileges of Coverture—
   Statutory Provisions.—The statute was not designed to pre-
   vent a married woman from borrowing money or to deny her
   the right to discharge her husband's debts or to do with her
   money as she pleases, and a lender's rights are not prejudiced
   by the wife's disposition of the money borrowed upon her note,
   provided the transaction is not a subterfuge to evade the
   statute, or a scheme to procure the obligation of the wife as
   surety for her husband or another.

2. Same.—A married woman under the statute may make con-
   tracts, sell and dispose of her personal property, sue and be
   sued as a single woman, and is liable for her debts and in
   all respects stands in the same position as if she were a
   single woman, except that under Ky. St. 1903, section 2127,
   no part of her estate may be subjected to the satisfaction of
   any contract made after marriage to answer for the debt of
   another, including her husband, unless such estate shall have
   been set apart for that purpose by deed of mortgage or other
   conveyance.

3. Same.—By Ky. St. 1903, section 2127, which provides that no
   part of a married woman's estate may be subjected to the
   satisfaction of any contract to answer for the debt of another
   even her husband, it was intended to preserve the estate of
   married women, from being wasted or impaired by the as-
   sumption of debts created for the use and benefit of other

persons and from which they might derive no benefit, and the courts will not allow the statute to be defeated by any misleading transaction, but will look beneath the surface to ascertain the real purposes of the parties.

4. Same.—Ky. St. 1903, section 2127, provides that no part of a married woman's estate shall be subjected to the satisfaction of any contract made after marriage to answer for the deed of another, including her husband, unless such estate shall have been set apart for that purpose by deed of mortgage or other conveyance. A wife executed a note to a bank to take up notes executed by her husband and held by the bank. She received no part of the proceeds of his notes or her note. No part of her estate was set aside as provided in section 2127 to secure the payment of her husband's indebtedness to the bank. The bank knew of the marriage relation, and that her note was to be used to take up and discharge the husband's indebtedness. Certain stock which he had pledged to secure his notes was also pledged as collateral to the wife's note. When she executed her note, such stock was worth more than the amount of it, and her husband was solvent, but soon thereafter the stock greatly decreased in value, and he became insolvent. Held, that the wife was not liable on the note, since by its execution she assumed the debt of her husband, within the meaning of the statute, the same as though she had signed her name as surety to a writing, promising to pay the debt.

McDERMOTT & RAY for appellant.

## POINTS AND AUTHORITIES.

1. Tierney is not a competent witness for his wife, the appellee except on matters of agency. (Code, sec. 606, subsec. 8.)

2. Appellant took Tierney's deposition only on matters connected with his acts as liquidator of corporation and as to the proceeds of his pledged stock. On cross-examination by the appellee, he testified for the first time about his wife's note sued on and was thereby made a witness for the appellee.

3. His testimony concerning his solvency at the time of his wife's transaction with the appellant bank and his insolvency later, not excepted to and therefore should stand.

Mrs. Tierney's deposition is incompetent except certain admissions made by her and not excepted to by the plaintiff. These admissions are binding upon her.

5. Both husband and wife cannot testify. Code, sec. 606; Logsden v. Stearn, 25 Ky. Law Rep., 1649; Wise v. Foote, 81 Ky., 10; Glover v. Suter, 18 Ky. Law Rep., 1018; Howard v. Tenny, 87 Ky., 52.)

### THE LAW OF THE CASE.

6. A married woman had the right under the laws of Kentucky to borrow money from a bank by discounting her note and what she does with the money thus borrowed is immaterial, and can have no effect whatever upon the validity of the contract. (Ky. Stat., 2127, 2128.)

7. A married woman has the right under the law to pay her husband's debts, and the fact that she borrowed the money for that purpose does not invalidate the contract or note through which she obtained that money. (Ky. Stat., 2127, 2128.)

8. If she had the right to borrow the money from some third person or corporation with which to pay a debt which her husband owed the Third National Bank, therefore she had the right to borrow it of the Third National Bank. (Ky. Stat., 2127, 2128.)

9. At the time she paid her husband's notes and he was released and at the date said notes would have become due he was perfectly solvent. He afterwards became insolvent, and she then, for the first time, repudiated her note.

10. This being an original contract signed by appellee alone for money borrowed, she did not thereby become bound for the debt of another. (Deering v. Neal, (1904), 25 Ky. Law Rep., 1809.)

11. In order that one may become bound in law for the debt of another, that other must also remain bound. If the first obligor is released, his debt is paid and the last obligor is bound for his own debt and not for that of another. (Minors' Institutes, vol. 3, part 1, p. 178; Am. & Eng. Ency. of Law, vol. 29, p. 905, 912; Armstrong v. Flora, 3 Mon., 93; Haydon v. Christopher, 1 J. J. Mar., 382; Day v. Cloe, 4 Bush, 563; Fain v. Turner's Admr., 96 Ky., 634; Wagner v. The Bells, 4 B. Mon., 8; Myles Exr. v. Myles, 6 Bush, 737; Deering v. Veal, 25 Ky. Law Rep., 1809.)

12. Agency.—Tierney acted as agent of his wife in discounting her note and delivering her check and she is bound by all of his acts within the apparent scope of his authority. (Tompkins v. Triplett, 23 Ky. Law Rep., 305; Deering v. Veal, 25 Ky. Law Rep., 1809.)

13. Estoppel.—Appellee is estopped by her acts from pleading or claiming that she was surety upon the note sued on herein or that she by signing said note became bound for the debt or default of another. (Bull v. Sevier, 88 Ky., 515; Kern v. Raunser,

Third Nat. Bank v. Tierney.

20 Ky. Law Rep., 1945; Lane v. Lockridge, 20 Ky. Law Rep., 1102; Union Central Life Ins. Co. v. Johnson's Admx., 25 Ky. Law Rep., 682; Yokely v. Superior Drill Co., 80 S. W., 1153.)

14. Appellee's authorities.—Discussion of appellee's authorities. Appellee's authorities have no application to the facts involved in this case.

LEIBER & LINCOLN for appellee.

### POINTS AND AUTHORITIES. ·

1. The note of the wife having been executed and delivered in substitution for the two notes of the husband owing to the bank and without any other consideration to ·her· than the surrender of his obligations by the bank, the transaction comes within the inhibition of section 2127 Ky. Statutes and the wife is not liable therefor. (Ky. Stats., 2127; Russell v. Rice, 19 Ky. Law Reporter, 1613; Crumbaugh v. Postell, 20 Ky. Law Reporter, 1366; Deposit Bank v. Stitt, 107 Ky., 49; Milburn v. Jackson, 21 Ky. Law Reporter, 700; Postell v. Crumbaugh, 23 Ky. Law Reporter, 2193; Planters' Bank v. Major, 25 Ky. Law Reporter, 702; Hall v. Hall, 118 Ky., 660; Hines v. Hays, 26 Ky. Law Reporter, 967; Hart v. Bank of Russellville, 105 S. W. R., 834; Same v. Lockridge, 20 Ky. Law Rep., 1102.)

2. Cases distinguished. (Tompkins v. Triplett, 110 Ky., 826, 25, 305; Deering v. Veal, 25 Ky. Law Reporter, 1809.)

'OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

The only question involved in this record is whether or not the appellee is liable upon a promissory note executed and delivered by her to the appellant bank on January 22, 1903, whereby she promised to pay to it the sum of $3,400. It appears that Thomas G. Tierney, the husband of appellee, borrowed from the appellant in 1900 $4,000 for the purpose of paying part of the purchase price of 80 shares of stock subscribed for by him in the Tierney-Silbery Company. For this sum he gave his two individual notes ,signed by him alone, for $2,000 each, secured by the stock which he

pledged as collateral. These two notes were renewed
by him from time to time until February, 1902, when
$500 was paid; thus reducing the debt to $3,500. Un-
der the terms of the last renewal, one of these notes
was made to fall due on March 4, 1902, and the other
on June 10, 1902. Some time after the execution of
the last-mentioned notes, the bank notified Tierney
that, when they fell due in March and June, respect-
ively, they must be paid or additional security given.
After this, and before the notes became due, Tierney
notified the bank that it was not convenient for him
to get security, and he suggested that his wife, the
appellee, was solvent, and proposed that the bank
lend her $3,500 on her individual note, and that he
would pledge the 80 shares of stock to secure her note,
and with this money, Mrs. Tierney would pay off his
indebtedness of $3,500. This proposition was ac-
cepted by the bank, and on February 14, 1902, Tierney
brought to the bank a note signed by his wife for
$3,500, and also checks drawn by her upon the bank
for the proceeds of the note, when it should be placed
to her credit. The note and checks were delivered to
the bank, the note discounted and the proceeds, less
the discount, placed to the credit of Mrs. Tierney on
the books of the bank. Thereupon the checks she had
drawn on her account payable to the bank were ap-
plied to the payment of the notes of Tierney, and they
were delivered to him. At this time the two notes
executed by Tierney had not matured, and the evi-
dence shows that Tierney was then solvent, and re-
mained so until after the maturity of the notes. It
also appears that the 80 shares of stock pledged to
secure the note were worth more than the amount of
it, although soon after this the stock decreased in
value and was sold for $1,475, and Tierney became in-

solvent, and, further, that the note executed by Mrs. Tierney was several times renewed by her, and that she paid $100 on it. In the consideration of this case, it must be kept in mind, first, that the note sued on was executed by Mrs. Tierney to the bank to take up and discharge the notes executed by her husband and held by the bank; second, that she received no part of the proceeds of the notes executed by her husband or the note executed by herself; third, that no part of her estate was set apart as provided in section 2127 of the Kentucky Statutes of 1903 to secure the payment of the indebtedness of her husband to the bank; fourth, that the bank knew that appellee was the wife of T. J. Tierney, and that her note was to be used to take up and discharge his indebtedness to the bank; fifth, that the 80 shares of stock pledged to secure his notes were also pledged as collateral to the note of Mrs. Tierney. There is little, if any, conflict in the evidence, so that the question narrows down to the single proposition whether or not Mrs. Tierney under the facts stated is personally liable upon this note.

It is argued for appellant that under the statute a married woman has the right to borrow money from a bank by discounting her own note, and may do as she pleases with the money thus borrowed, and may borrow money to pay her husband's debts, and the fact that she borrows money for that purpose does not invalidate the contract or note upon which she obtains the money, and, further, that the lender is not chargeable with notice of the purpose to which the wife may put the money or required to look to an investment of it for her use and benefit. In the correctness of these propositions as general statements of the law we agree; but they are subject to important exceptions that will be later noticed. The statute was not de-

signed to prevent a married woman from borrowing
money or to deny her the right to discharge her hus-
band's debts or to do with her money as she pleases;
nor are the rights of the lender affected or prejudiced
by the disposition made by the wife of the money
borrowed upon her note, provided the transaction is
not a subterfuge or device to evade the statute or a
scheme to procure the obligation of the wife as surety
for her husband or another.  A married woman under
the statute may make contracts, sell and dispose of
her personal property, sue and be sued as a single
woman, and is liable for her debts, except that under
section 2127 ''no part of a married woman's estate
shall be subjected to the payment or satisfaction of
any liability upon a contract made after marriage to
answer for the debt, default or misdoing of another,
including her husband, unless such estate shall have
been set apart for that purpose by deed of mortgage
or other conveyance.''

In all respects, with the exceptions pointed out in
the statute, a married woman, in so far as her prop-
erty rights are concerned, stands in the same position
as if she were a single woman.  The limitations im-
posed upon her by the statute are intended to protect
her interest and to prevent her from becoming in-
volved as the surety of her husband or any other
person, unless the obligation is assumed in the man-
ner pointed out in the statute by which married women
may pledge their property, and bind it as security for
the payment of debts assumed as surety.  In no other
way than the one provided by statute can a married
woman's estate be subjected to the payment of debts
contracted as surety.  This statute has been before
this court in a number of cases, and in all of them
we have endeavored to give it such a construction as

would effectuate the legislative intent which was to preserve the estates of married women from being wasted or impaired by the assumption of debts created for the use and benefit of other persons and from which they might derive no benefit. On more than one occasion ingenious efforts have been made to evade the statute, but they have failed of their purpose. And, whenever it has appeared that an effort was being made to subject the estate of a married woman to the payment of another's debts, unless her estate was set apart for that purpose in the manner provided in the statute, we have uniformly held that it could not be done. The question of the honesty of the transaction, or the object for which the debt was made, or the hardship the creditor must suffer, has never been permitted to alter our decision not to impair the efficiency of the statute, or permitted inroads to be made upon its useful purpose. The fact that the husband is released by the note of the wife taken in satisfaction of his debt, or the fact that the husband was solvent when the novation took place and the lender might have collected from him his debt, although afterwards and when the wife interposes the statutory plea to relieve her he may be insolvent, will not be allowed to defeat the intention of the law. Nor will the court be misled by the superficial appearance of the transaction. It will look beneath the surface to ascertain the real purpose of the parties.

The controlling feature in this case, and the one by which it must be adjudged, is that Mrs. Tierney by executing her note to the bank took up and discharged a note it held against her husband alone, and when the bank knew that the liability she assumed was her husband's debt. No question of estoppel or release or fraud or agency or insolvency or other thing can

destroy the effciency of this dominating fact to relieve her from liability in this case. Indeed, no fraud is shown nor is there evidence of agency or estoppel that will bind her.

Cases sufficiently like the one under consideration to control its adjudication have been before us more than once. Thus in Russell v. Rice, 44 S. W. 110, 19 Ky. Law Rep. 1613, a married woman who was co-surety with another for her husband executed to the co-surety her note for half the amount he had paid in consideration of his releasing her husband, but it was held that the note was not binding upon her, although by reason of it her husband had been discharged from liability. In Crumbaugh v. Postell, 49 S. W. 334, 20 Ky. Law Rep. 1366, Postell held the notes of the husband with one William as surety. The latter desiring to be released, the husband proposed to Postell to give him his wife's note in lieu of the ones upon which Williams was surety, and, upon Postell consenting to this arrangement, the husband obtained his wife's notes and delivered them to him, whereupon he surrendered the old notes to the husband. It appeared that Postell had no conference or communication with the wife, and she made no representations to him. Under these facts the court held that the wife was not liable as the notes were executed to discharge her husband's debts. In Deposit Bank of Carlisle v. Stitt, 107 Ky. 49, 21 Ky. Law Rep. 671, 52 S. W. 950, Mrs. Stitt desired to borrow from the bank for the use of her husband $150. The bank held an unpaid note of her husband for $125, and in consideration of her assumption of this debt by the execution of her note in lieu thereof, the bank advanced to her the $150. In opposition to her defense in a suit to recover the $125 the bank insisted that the release of the husband

was a sufficient consideration to uphold her promise to the bank, as it had delivered to her the note against her husband; and that her engagement to pay the debt was an original undertaking of her own and not a contract to answer for the debt, default, or misdoing of another.  But the court held she was not liable.  In Milburn v. Jackson, 52 S. W. 949, 21 Ky. Law Rep. 700, under a state of facts similar to those in the Stitt Case, the court reached the same conclusion.  As further illustrating the views of this court upon the construction of this statute, we may call attention to the cases of the Planters' Bank & Trust Co. v. Major, 76 S. W. 331, 25 Ky. Law Rep. 702; Hines v. Hays, 82 S. W. 1007, 26 Ky. Law Rep. 967; Hall v. Hall, 118 Ky. 656, 26 Ky. Law Rep. 553, 82 S. W. 269; Black v. McCarley's Ex'r, 126 Ky. 825, 104 S. W. 987, 31 Ky. L. R. 1198; Hart v. Bank of Russellville, 127 Ky. 424, 105 S. W. 934, 32 Ky. L. R. 338.  An attempt is made to bring this case within the rule announced in Tompkins v. Triplett, 110 Ky. 824, 23 Ky. L. R. 305, 62 S. W. 1021, 96 Am. St. Rep. 472, and Deering v. Veal, 78 S. W. 886, 25 Ky. Law Rep. 1809, but it is easily distinguishable from both of those cases.  In the Triplett Case the husband of Mrs. Triplett applied to Tompkins to loan him money, which he refused to do, but told him he would lend it to his wife, whereupon Triplett procured his wife's signature to the note and delivered it to Tompkins, and the court held that Mrs. Triplett had constituted her husband as agent to deliver the note and receive the money, and that she was bound by the representations he made as her agent.  The wife did not in any sense become the surety of her husband, nor was her note or the proceeds thereof used to take up any note that Tompkins held agianst her husband.  The lending of the money to Mrs. Triplett was an original trans-

action. It was treated by the court as if she had herself applied to Tompkins for the loan and executed to him her note and obtained the money thereon. In the Deering Case, under facts very similar to the Triplett Case, the court followed it. There is no conflict whatever between the principles herein announced and those laid down in the Triplett and Deering Cases. There could not well be any, because the essential facts that are decisive points in the cases are radically different. If the appellant banks, as an original transaction, had loaned to Mrs. Tierney $3,500 upon her application therefor, in person or by agent duly authorized, she could not as against the bank interpose the defense that the money obtained had been applied to the payment of her husband's debts due to other persons or the defense that her husband had taken the money from her and appropriated it to his own use, or the defense that she did not receive the use or benefit of the money. But this is not the state of facts we are dealing with. Here the money obtained by the wife on her note from the creditor of the husband was applied by the creditor to discharge the husband's debt. So far as the legal effect of the transaction upon the wife is concerned, it was precisely the same as if she had signed her name as surety for her husband upon a note executed by him to the bank. If the bank could hold her liable upon her note, accepted by it for the purpose of discharging a debt due it by her husband, we are unable to perceive why it could not hold her liable if she had signed her husband's note as surety for the same debt. If the statute can in this way be evaded, it might as well not have been enacted, as it is plain that it would not accomplish the purpose for which it was intended. If the argument made by counsel for appellant were

sound, then the creditor of the insolvent husband
could secure his debt by taking in its place the obli-
gation of the wife and thereby bind her estate,
although, if the husband executed with his wife as
surety his obligation to pay the debt or demand, she
would not be liable thereon. When the creditor of the
husband takes in satisfaction of his debt the obliga-
tion of the wife, the wife is in effect becoming the
surety of the husband, and the creditor accepts her
note with the intention of looking to her for its pay-
ment. The fact that it is the creditor of the husband
that advances the money to the wife to pay to him
her husband's debt, or that he accepts the obligation
of the wife in discharge of the debt of her husband,
or takes her as surety for her husband to better secure
a loan made to him, is the essential thing that places
his relation to the transaction in a different attitude
from that of the person, who, as an original business
proposition, lends the wife money to do with as she
pleases, and who derives no benefit or advantage ex-
cept such as grows out of the interest or profit he may
secure from the loan of the money. When the wife
executes her note to take up the debt of her husband
or borrows from the creditor of the husband on her
own obligation the money and hands it to him to pay
her husband's debt, she is in the meaning of the stat-
ute assuming the debt of another, the same as if her
name was signed as surety to a writing promising
to pay the debt. The form of the transaction will
not be allowed to defeat the statute, when the sub-
stance is an evident attempt to evade it. This rule
will not impair or interfere with the power of a mar-
ried woman to borrow money or contract indebtedness
in the ordinary course of business, or charge the per-
son from whom she obtains it with notice of the use

to which it is put, unless he be the husband's creditor and the money is borrowed from him to pay the husband's debt.

Wherefore the judgment of the lower court is affirmed.