## Cawood v. Madison Southern National Bank & Trust Company.

(Decided Dec. 8, 1933.)

B. M. LEE and ZEB A. STEWART for appellant.
BURNAM & GREENLEAF for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

At the time of the transactions here involved, the Madison National Bank & Trust Company was a national banking institution located in Richmond, Ky. Later, it liquidated its affairs and the appellee and plaintiff below, Madison Southern National Bank & Trust Company, absorbed its business and became the owner of its assets. Some time prior to May 10, 1930, G. D. Blevins applied to plaintiff's predecessor for a loan of $1,500 and offered his mother as surety on the note. He was informed that the note so executed would not be acceptable, whereupon he stated to the officer of the bank to whom he applied that he held a number of accounts against different individuals in Harlan, Ky., and that he would place them as collateral security to the note of himself and mother. He was informed that the bank did not accept open accounts as collateral to

its notes, but that if he would convert his accounts into notes duly executed by his creditors, then the bank might accept them as such collateral, provided it satisfied itself, upon investigation, of the solvency of the makers. Blevins then departed and returned on May 27 following, and then presented to the bank a note dated May 10, 1930, executed to himself by the appellant and defendant below, Mrs. F. F. Cawood, whereby she agreed and promised to pay him one year after date the sum of $1,500, and which was signed by herself alone: It was on a printed form (with blanks filled in) of notes used by the Southern National Bank of Richmond, which, either at that time or prior thereto, was a going banking concern in that city. Between the two visits of Blevins, plaintiff's predecessor, to whom application was made for the loan, received two letters from the presidents of two distinct banks in Harlan, Ky., recommending the solvency of Mrs. Cawood, and which each of the writers had been requested by her to send, and when Blevins offered to indorse and place defendant's note as collateral security for the one executed to the bank by himself and mother the proposition was accepted: and the transaction completed.

The Blevins note not having been paid, and Mrs. Cawood refusing to pay the collateral note which she had executed to him, plaintiff, as absolute owner of the Blevins note, and as a pledgee and equitable holder of defendant's note, filed this action on it against her and Blevins, the indorser thereof, in the Madison circuit court wherein Blevins was served and process issued to Harlan county for defendant and appellant. Blevins made no defense to the action, but Mrs. Cawood denied that plaintiff was a bona fide equitable owner of her note in due course, and then averred that the note sued on was without consideration and that she executed it purely as an accommodation maker and with the purpose of becoming surety for G. D. Blevins on any note that he might execute to any one who would advance or lend to him that amount of money, and that she was a married woman at the time, and under the provisions of section 2127 of our Statutes she could not so obligate herself. Following pleadings made the issues, and by agreement of parties the case was transferred to equity and the proof was taken by depositions, after which the cause was submitted to the court and judgment was

rendered for plaintiff, to reverse which defendant, Mrs. Cawood, prosecutes this appeal.

Defendant's counsel in their briefs filed in this court strenuously argue that the execution of the note sued on by their client was purely a suretyship transaction, and that it is embraced by the section of the statute referred to, and in support of that argument they rely on a number of cases from this court, among which are Deposit Bank of Carlisle v. Stitt, 107 Ky. 49, 52 S. W. 950, 21 Ky. Law Rep. 671; Lucas v. Hagedorn, 158 Ky. 369, 164 S. W. 978; Farmers' Bank v. Williams, 205 Ky. 261, 265 S. W. 771; Bank of St. Helens v. Mann's Ex'r, 226 Ky. 381, 11 S. W. (2d) 144; Simmons v. Maxey, 242 Ky. 728, 47 S. W. (2d) 530; Oatts v. First National Bank of Somerset, 244 Ky. 635, 51 S. W. (2d) 952; and many others cited in those opinions. A reading of them will disclose that this court, in determining whether or not the wife's obligation, and her relationship to the contract which is the subject-matter of litigation, is valid and enforceable against her, is governed by the substance and not the form of the transaction. Therefore, in the determination of that question the court will discard any subterfuge resorted to whereby the true situation and the correct relationship of the married woman to the transaction is attempted to be veiled.

If the facts in the case disclose an actual suretyship relationship of the married woman to the obligation sought to be enforced, then her defense under the statute will be given effect. But on the other hand, if the facts disclose an individual undertaking on the part of the married woman on her own behalf, and with the intention of incurring a personal obligation on her part, even though when executed it be for the benefit of another, then the defense is not available to the female married defendant and plaintiff may recover judgment against her. It will therefore be seen that each case depends upon its own facts. It will also become manifest, upon reading of our opinions dealing with the subject, that in practically if not all of the cases the creditor who sought to enforce the obligation of the married woman possessed knowledge of all the facts affecting the nature and kind of obligation assumed by her; and that, although the transaction took a different form, yet if, in reality, it was nothing more in substance than

an effort on the part of the married woman to incur the liability of surety, she will be released, regardless of the form of the contract entered into by the parties.

One of the latest cases before us, and in which two examples of transactions (in one of which the wife was held liable, and in the other she was not) were discussed and determined, is Smith v. First National Bank of Pikeville, 243 Ky. 716, 49 S. W. (2d) 538. Three prior cases that dealt with the different situations presented by the testimony are Tompkins v. Triplett, 110 Ky. 824, 62 S. W. 1021, 23 Ky. Law Rep. 305, 96 Am. St. Rep. 472; Third National Bank of Tierney, 128 Ky. 836, 110 S. W. 293, 33 Ky. Law Rep. 418, 18 L. R. A. (N. S.) 81; and Hannen v. People's State Bank, 195 Ky. 58, 241 S. W. 355. A number of others will be found cited in those opinions, and in all of them the determining factors hereinbefore referred to were recognized and applied. In all of the cases it was recognized by this court that since the passage in 1894 of what is generally known as the "Weissinger Act," of which the section of the statute, supra, is a part, a married woman may enter into any character of contract and thereby obligate herself individually, except the one of suretyship for another, including her husband. It will also be observed in reading those opinions that this court will interpret the facts of each transaction with the view of liberally applying the statute so as to exonerate the married woman from liability on a suretyship contract; but at the same time it will not allow her to employ the statute to prepetrate a fraud and thereby shield herself from liability on her actual personal obligations.

Applying the rules and principles so announced in our former opinions dealing with the subject, to the facts of this case, we conclude that the court properly held defendant liable on her obligation which she individually executed to Blevins, and properly rendered personal judgment against her. Indeed, we find nothing in the record creating a foundation for any doubt touching the matter. Even defendant in giving her testimony (which was all that was introduced by her) did not claim that in executing her note to Blevins (the one sued on) she intended to become secondarily liable with him to plaintiff, or any other person who might advance money on the faith of her credit. After stating

that she was approached by Blevins for financial assistance, she said:

"I signed the note. He came to me with one filled out—I signed it hurriedly not knowing much about it. He said he was going in business and had to borrow money, and I signed the note.

"Q. Did he ask you to sign a note payable to himself, or did he ask you to sign a note or go his surety to borrow money? A. Nothing more, except that I signed the note."

It will thus be seen that according to her own testimony her intention was that Blevins should employ her note in any manner he saw proper in order to obtain the funds that he represented to her he needed, and which included an outright negotation of the note to an innocent purchaser in due course if he saw proper to do so. It is conceded by her counsel in this case that, if he, instead of pledging her note as collateral to the one executed by himself and his mother, had indorsed and negotiated it to the bank whereby it became the absolute holder in due course, the defense herein interposed would be unavailing, and which is correct, since the note on its face is the obligation of but a single individual as principal, and that individual is defendant. It bears no marks of a suretyship obligation, but only that of a single principal. It is a maxim, applicable in law as well as in logic, that the whole of anything includes all of its parts. Therefore, if defendant would be liable under counsel's concession supra, whereby plaintiff would obtain the whole of the title to the note sued on, a fortiori would she also be liable when it obtained only an equity in the note, which is only a pro tanto or partial title thereto, and which conclusion finds recognition in our Negotiable Instruments Statute (section 3720b-1 to and including section 3720b-195 of our Statutes, supra), wherein its section 3720b-27 says: "Where the holder has a lien on the instrument, arising either from contract or by implication of law, he is deemed a holder for value to the extent of his lien." In this case defendant's collateral note is coextensive in amount with Blevins' obligation that he executed to the bank with his mother as his surety, and the pledging of it to that bank was for all practical purposes an absolute transfer of the title to it. We have not under-

taken to discuss the true nature of a suretyship contract of a married woman, i. e., whether it is void or only voidable, for the reason that we have determined that the one involved here is not one of surety for another, but is an absolute personal obligation of defendant, the only one who executed it. She, as we have seen, is not forbidden by the statute upon which she relies to borrow money herself, and turn it over to a third person if she sees proper to do so, and which we conclude is the nature of the transaction that she had with Blevins, and her obligation which she then executed to him portrays such a purpose on her part with nothing to indicate to the contrary, and with no knowledge on the part of the bank who later took it as collateral security, that it evidenced any purpose not shown on its face.

The facts in this case are largely analogous to those involved in that of Tompkins v. Triplett, supra, except that they were more favorable to the same defense there than is true in this case. We therein held that the husband who effected the completed transaction with the bank in that case was the agent whom the wife had created for the purpose of obligating her to the bank on a personal transaction of her own. Similarly, it should be said that in this case defendant constituted Blevins her agent to obtain the money he desired through the use of the note she executed to him. and whereby he became her debtor to the extent of her obligation as between him and her. She could defeat any action brought by him on the note upon the ground of no consideration, but that defense is unavailable to a holder of a negotiable instrument in due course as is plaintiff in this case.

Wherefore, for the reasons stated, the judgment is affirmed.

The whole court sitting.