## Redmon v. First National Bank of Paris, Ky., et al.

(Decided Dec. 7, 1934.)

GEORGE BATTERTON for appellant.

BRADLEY & BLANTON for appellee First Nat. Bank of Paris.

GENE LAIR for appellee Bourbon Fiscal Court.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The appellant, and one of the defendants below, Mary A. Redmon, and another defendant below, C. F. Redmon, are husband and wife, who, at the beginning of the transactions here involved were living in a residence owned by the wife and situated in Paris, Ky. The wife also owned a farm in Bourbon county which the husband chiefly supervised and operated with some aid and assistance of his wife and their three sons, the oldest of whom was about 19 years of age and the youngest about 15. They had been married between 25 and 30

years in 1915, in the latter part of which, or at the beginning of 1916, a business operation was started in Paris, Ky., under the designation of "Redmon Motor Car Company," which was chiefly managed by the husband and the three sons, neither of whom had any property of any character whatever, and which was known, not only to the wife (appellant), but also to the appellee and plaintiff below, First National Bank of Paris, as well as all others acquainted with the family. Up to that time nor since has the bank ever had an account in the name of the husband, since all of the income from the farm, or any that was otherwise produced by any member of the family prior thereto, was deposited in the bank to an account in the name of Mrs. Redmon, and she was known and considered by it as the only financially responsible member of the family.

About that time Mrs. Redmon bought an automobile and gave a check for its price on her individual account, and it was turned over to the Redmon Motor Car Company, or at any rate it took charge thereof with her knowledge. It was necessary for that concern to procure the funds with which to operate the business, and a note was executed to the bank by Mrs. Redmon and her husband for a considerable sum, she signing her name on the first line as an obligor, and he on the second one. The proceeds of that note were credited to the Redmon Motor Car Company and Mrs. Redmon's former account in the bank was likewise transferred to it, and thereafter all checks by any member of the family were charged to it. The motor car company continued to operate until 1923 when a fire destroyed the stock and the business was not thereafter resumed. However, in the meantime other notes were similarly executed, followed by the same manner of handling the proceeds, and when they would mature renewals were likewise executed until the Redmon Motor Car Company ceased to do business, and at the time of the filing of this action the indebtedness as so continued to be renewed was represented by a note for $11,936.68 and two other small ones of $188.73 and $388.83, and which was its status on October 24, 1931, when the bank filed this action against the makers of the notes, Mr. and Mrs. Redmon. In its petition it made the Bourbon fiscal court a party defendant for the purpose of setting aside a mortgage that had been given to it to secure an indebtedness due it from Mrs. Redmon for borrowed money from two

funds for which the fiscal court was trustee, it being charged in the petition that the mortgage (and especially the one on the residence in Paris) was a fraudulent preference.

The defenses interposed by defendants were, in substance, that Mrs. Redmon, the only appellant on this appeal, was a married woman at the time she created the indebtedness sued on, and at the time she executed any and all of the notes that were renewed up to and including the ones in litigation, and that she was and is only surety on all of them, and that she had not placed any of her property in lien to secure any of them and because of which the provisions of section 2128 of our present Statutes enacted in 1893 and commonly known as the "Weissinger Act" exempted her from liability on any of them. The material allegations of the petition attacking the mortgage that Mrs. Redmon gave to the fiscal court were denied. After proof taken, the cause was submitted for trial, and the court sustained the prayer of the petition and rendered personal judgment against Mr. and Mrs. Redmon for the aggregate amount of the indebtedness sued on. It also declared the mortgage executed to the fiscal court on the residence in Paris a preferential transaction, followed by the necessary orders to enforce that conclusion, and from that judgment Mrs. Redmon alone prosecutes this appeal, there being no effort to disturb the judgment with reference to the adjudged preference made to the fiscal court. The only question argued on this appeal is one of fact, i. e., whether or not Mrs. Redmon was only surety on the notes sued on and on those in renewal of which they were executed, or was she a principal? If the former be true, as appellant contends on this appeal, then the judgment is erroneous and should be reversed; but, if the latter be true, then the judgment should be affirmed.

It will be noted that the indebtedness began something like 15 or 16 years before this action was filed and it was originally created in the manner we have stated, and numerous are the times when it was renewed in the same manner during that period. Sometimes Mrs. Redmon would sign the notes at the bank, while at others they would be taken to her residence where she would sign them and deliver them to the messenger to be delivered to the bank, which was done. From time to time throughout that period, or rather during the continu-

ance of the business of the Redmon Motor Car Company, statements were periodically rendered showing the status of the bank account against which Mrs. Redmon issued individual checks which she signed and against which the Redmon Motor Car Company also issued checks, both of them being charged against the account of the Redmon Motor Car Company. The statements so rendered showed the account under which all deposits of the Redmon family were carried, as well as all checks issued upon and paid out of it. Mrs. Redmon may not have seen each and every one of such statements made and mailed out by the bank during that period, but she admits seeing some of them, as is shown by this excerpt from her testimony:

"Well I glanced over them, who would have thought about anything."

"Q. Did you wonder what had become of your money or anything of that kind? A. No sir.

"Q. Did you wonder why you had so much money when one of these bank notes would be put to your credit? A. No.

"Q. Did you inquire about that? A. Yes, I did inquire.

"Q. Who did you inquire of? A. My husbana.

"Q. Did he tell you? A. No sir.

"Q. Did you ask him if he was putting these notes to your credit? A. No sir.

"Q. What did you inquire? A. Just how much I had and things like that.

"Q. Now you say Mr. Redmon was the owner of the Redmon Motor Company? A. Yes sir.

"Q. And he did not have a penny? A. Yes he was the owner.

"Q. Where did he get the money to buy it? A. The bank let him have it.

"Q. With your name on it? A. Yes sir.

"Q. You knew at the time he went in the business that he did not have a penny? A. Yes.

"Q. And that all he could get would be what he would borrow with your name on it, you knew that? A. Yes."

She then testified that she never told the bank that she was only surety on the note and never made any such claim until about the time she executed the attacked

mortgage, which was a short while before the filing of this action. We thus see the background, as painted by the facts thus far related, to be that a motor business was started up, the first vehicle toward the establishment of which was purchased by Mrs. Redmon, and that she at or near that time obtained the funds with which to equip and operate the business to be managed by her husband and sons, the first of whom had theretofore been her chief and practically the sole manager of her other properties, and that such persons to whom the management and control of that business were intrusted possessed not a vestige of property whatever of any kind, or practically none. It is inconceivable under such facts, and many others appearing in the record, that Mrs. Redmon did not know that her bank account was changed and thereafter run in the name of Redmon Motor Car Company, or that her checks, as well as those given by that company, were paid out of that account which was created largely by notes signed by her apparently as principal. It should not be overlooked that this is not a case where the husband had previously contracted an individual debt of his own, and it was later renewed by a note executed by his wife, with the creditor actively participating and consenting to such an arrangement whereby she clearly became the surety for the payment of her husband's pre-existing debt. Neither is it a case where every one knew that the embarkation (whatever it may have been) was one exclusively undertaken by the husband with whatever means he possessed and later contracting an indebtedness in the operation of the business so embarked upon, and which his wife undertook to assume nominally as principal by executing her own note therefor. In such cases we have in a number of opinions characterized the transaction as a mere subterfuge and applied thereto the provisions of section 2128, supra, by exonerating the wife from liability. It is to such classes that the cases relied on by appellant's counsel belong. They are Hines & Co. v. Hays, 82 S. W. 1007, 26 Ky. Law Rep. 967; Third National Bank v. Tierney, 128 Ky. 836, 110 S. W. 293, 33 Ky. Law Rep. 418, 18 L. R. A. (N. S.) 81; Lucas v. Hagedorn, 158 Ky. 369, 164 S. W. 978; Brady v. Equitable Trust Co., 178 Ky. 693, 199 S. W. 1082; Bank of St. Helens v. Mann's Ex'r, 226 Ky. 381, 11 S. W. (2d) 144; Simmons v. Maxey, 242 Ky. 728, 47 S. W. (2d) 530, and Oatts v. First National Bank of Somerset, 244 Ky. 635, 51 S. W. (2d) 952.

It would not be a difficult task, although a tedious one, to take up each of them and analyse our opinions therein whereby the differentiating facts in them from those of this could be clearly shown. In every one of them it was recognized that, while the statute will be given a liberal interpretation to carry out its purpose, yet it would not be so construed as to enable the wife to practice a fraud upon a confiding creditor whom she by her words or conduct had induced to extend exclusive credit to her as the primary debtor. In those opinions, and others that we will hereinafter cite, it was likewise said that the statute did not prevent a married woman from borrowing money on her own credit and turning it over to another, or consenting for it to be done, to be used and employed by such one as he might deem proper, since in that event the vice and evils sought to be cured by the statute would not exist. They were that, if a married woman could be held on her surety contracts without placing her property in lien therefor by a mortgage duly acknowledged and recorded, she would be placed at the mercy of an indigent husband, or that of a principal in whom she confided, as well as subjected to the chicanery of the creditors of such a principal, and thereby be led into dissipating her property in satisfaction of such otherwise insolvent debts. The very statute under which the exemption is extended to married women expressly confers on her all the privileges and rights that other sui juris owners possess with reference to their property, except the one of becoming surety for another so as to legally obligate her personally for the debt and to thereby eventually consume her property in satisfaction of another's indebtedness.

Our cases are numerous wherein we held that the wife, notwithstanding the statute, may execute her own obligation, the proceeds of which are obtained and used by another, when it was clearly the intention and purpose of all parties concerned that the credit was extended to the married woman, and that she so intended at the time, and in each of which she was held liable because it was found that the indebtedness was one in which she was principal and not surety. The learned chancellor in the judgment appealed from said, in part: "It is now adjudged that the facts in this case, in all material respects, seem to be strikingly similar to the facts in the cases of Tompkins v. Triplett, 110 Ky., page 824, 62 S. W. 1021, 23 Ky. Law Rep. 305, 96 Am. St.

Rep. 472; Swearingen's Executor v. Tyler, 132 Ky. page 458, 116 S. W. 331; Scott v. First National Bank of Pikeville, 221 Ky. page 297, 298 S. W. 949, and Smith v. First National Bank of Pikeville, 243 Ky. page 716, 49 S. W. (2d) 538. The court, in each of those cases, in denying relief to the wife, under section 2128, Kentucky Statutes, pointed out that she had the right to borrow money and lend it to her husband, if she wished to do so; that the transaction was legitimate and there was no evidence of an attempt to evade the statute for the benefit of the lender, whose sole interest in the transaction was to negotiate a legitimate loan in the usual course of business; that the wife, as principal on the note, may constitute the husband as her agent to deliver the note, signed by her, to the payee, and although as a matter of fact she may not have received the use or benefit of the money, yet she should be held responsible on her note, which she signed as principal.''

That was said on June 9, 1933, the day upon which the judgment was rendered, and on December 8, of the same year, we rendered our opinion in the case of Cawood v. Madison Southern National Bank & Trust Co., 251 Ky. 637, 65 S. W. (2d) 734, 735. In that opinion we referred to the cases cited and relied on by learned counsel for appellant, and differentiated them from those referred to in the court's opinion, they being also cited in the Cawood Case. In that opinion we said, inter alia: ''If the facts in the case disclose an actual suretyship relationship of the married woman to the obligation sought to be enforced, then her defense under the statute will be given effect. But on the other hand, if the facts disclose an individual undertaking on the part of the married woman on her own behalf, and with the intention of incurring a personal obligation on her part, even though when executed it be for the benefit of another, then the defense is not available to the female married defendant and plaintiff may recover judgment against her. It will therefore be seen that each case depends upon its own facts. It will also become manifest, upon reading our opinions dealing with the subject, that in practically if not all of the cases the creditor who sought to enforce the obligation of the married woman possessed knowledge of all the facts affecting the nature and kind of obligation assumed by her; and that, although the transactions took a different form, yet if, in reality, it was nothing more in substance than an effort on the part of the married woman to incur the

liability of surety, she will be released, regardless of the form of the contract entered into by the parties. * * * She, as we have seen, is not forbidden by the statute upon which she relies to borrow money herself, and turn it over to a third person if she sees proper to do so, and which we conclude is the nature of the transaction that she had with Blevins, and her obligation which she then executed to him portrays such a purpose on her part with nothing to indicate to the contrary, and with no knowledge on the part of the bank who later took it as collateral security, that it evidenced any purpose not shown on its face.''

We then referred to some of the cases in which the wife was held liable, notwithstanding she failed to obtain the proceeds of her note, under circumstances wherein it clearly appeared that she intended to and did become the principal debtor in executing it, and that her obligation was bona fide accepted as such by the creditor. Those cases are now relied on by attorney for appellee in his brief filed in this case, and they are, Smith v. First National Bank of Pikeville, 243 Ky. 716, 49 S. W. (2d) 538; Tompkins v. Triplett, 110 Ky. 824, 62 S. W. 1021, 23 Ky. Law Rep. 305, 96 Am. St. Rep. 472; Third National Bank v. Tierney, 128 Ky. 836, 110 S. W. 293, 33 Ky. Law Rep. 418, 18 L. R. A. (N. S.) 81, and Hanen v. People's State Bank, 195 Ky. 58, 241 S. W. 355.

In this case we have not overlooked the fact that Mrs. Redmon testified that she signed the note only as surety for her husband, but she never told the bank of that, and for a period of about 15 years she continued to renew the indebtedness in the same way with such secret hidden in her bosom. In the meantime the business of the Redmon Motor Car Company continued, and all of her business operations with the bank were conducted in the manner hereinbefore set out and under such circumstances as to clearly indicate that she was the financier in the operation of that business, the management of which she intrusted mainly to her husband and their three youthful sons, who were to share in the profits thereof, if any. It is not impossible to conceive that she entertained the laudable desire for, not only her husband to embark in some business thought to be profitable, but which would likewise open up an avenue by which her sons could engage in an honorable, and what all of them no doubt thought would be, a profitable avo-

cation. Every indication and every circumstance in the case fortifies that conclusion, and we do not think that the force and effect of them may be overcome by a weak express denial of the material facts creating liability on her part, made for the first time long after the business was destroyed by fire, with the notes that furnished its life blood unpaid. The facts and circumstances as we appraise them are sufficient to sustain two conclusions, either one of which would render appellant liable on the notes sued on. They are: (1) That Mrs. Redmon was a partner, although she may have been a silent one, in the firm of the Redmon Motor Car Company; or (2) that she borrowed the money on her own account with the view of turning it over to her husband and sons to enable them to embark in that business. The court in its judgment did not specifically say upon which of those grounds he based his judgment, but it is our conclusion that it could have been done upon either or both of them, as is distinctly pointed out in the Cawood Case and others cited therein.

Wherefore, for the reasons stated, the judgment is affirmed.