## Brady v. Equitable Trust Company, of Dover.

(Decided January 18, 1918.)

### Appeal from Greenup Circuit Court.

1. Husband and Wife—Guaranty or Suretyship.—A married woman can not assume the debt of her husband, nor of any one else, nor be bound as a surety, except in the way and manner designated by the statute, section 2127, Kentucky Statutes.
2. Husband and Wife—Mortgage—Joinder of Husband.—A married woman, her husband joining with her, is authorized to mortgage her real property to secure the husband's debts, and the mortgage will be binding upon her, if voluntarily made and fairly understood.
3. Husband and Wife—Guaranty or Suretyship.—It does not matter what the form of the undertaking is or what the parties'may call the undertaking of a married woman, if it is, in fact, an assumption by her of the debt of another, she will not be bound, unless she makes the undertaking in the manner provided by the statute, and in such transactions the court will look to the substance and not the form of the undertaking.
4. Contracts—Duress.—Duress will not avail as a plea to defeat a contract, unless the one who is seeking to enforce the contract or his agent imposed the duress; or it must be done with his knowledge and taken advantage of by him to secure the contract.
5. Contracts—Consideration.—A consideration sufficient to uphold a contract is some benefit to the promisor or some loss, forbearance or detriment to the promisee.
6. Appeal and Error—Clerical Misprision.—An appeal will not lie from a judgment because of a clerical misprision, until after a motion is made to correct it, in the court, which rendered it.

S. S. WILLIS, RICHARD D. DAVIS and ELMER FULLERTON for appellant.

ALLEN D. COLE and H. W. COLE for appellee.

OPINION OF THE COURT BY JUDGE HURT—Affirming in part and reversing in part.

In 1907, Dr. A. S. Brady, the husband of appellant, Cora Brady, and one George Petty, as partners, were

engaged in conducting a cooperage business, in Greenup, under the style of the Greenup Cooperage Company. Dr. A. S. Brady was, also, a stockholder and a director in the Citizens State Bank, a banking institution of Greenup, organized under the laws of this State, and having a capital stock of $15,000.00. The Greenup Cooperage Company became indebted to the bank in the sum of $4,-500.00, to secure which it executed a mortgage upon the real estate of its plant. Thereafter, the cooperage company made an overdraft upon the bank to the amount of $5,500.00, which the bank allowed, and paid the drafts. Dr. Brady thus became indebted to the bank in the sum of $10,000.00, which was an amount equal to two-thirds of its capital stock. It seems that the cashier of the bank allowed the overdrafts, in expectation, that certain parties, who had been supplying the Cooperage Company with funds for its operation, would deposit checks sufficient to satisfy the overdrafts, but failed to do so. The cashier became alarmed and notified some of the directors of the situation, and a meeting of the directors was had on the 21st day of March, 1907. At this meeting there were present Cole and Hoffman and Dr. Brady, directors, and Kinner, the president, and Literal, the cashier, who were also, probably directors. The matter of the indebtedness of the Cooperage Company to the bank was discussed and an arrangement to secure the bank was tried to be devised, as well doubtless as to devise a plan to shift the indebtedness in such a way as that one concern or person should not appear to be so large a debtor of the institution. The cashier, Literal, proposed to take up and secure $2,000.00 of the overdraft, and expressed his belief that one Warnock could be induced to secure $500.00 of it, and these suggestions seem to have been effected and carried out, though in exactly what form it does not appear, nor do the particulars, in relation to how this was done, appear from the record. The proposals seem to have been made with the view and upon condition, that Dr. Brady would thereby be enabled to secure the remaining $3,000.00 of the overdraft, it having been suggested by one of the directors, that probably Mrs. Brady, the appellant, would secure the remaining $3,000.00, by executing a mortgage upon her real estate, and that the doctor would further secure it, by putting in pledge, a diamond ring, which he owned, and which he valued at $350.00. Dr. Brady then went to

confer with his wife, the appellant, upon the subject and after further consultation, the following plan was adopted. Dr. Brady, as one of the partners, executed the note of the Cooperage Company to his wife, the appellant, for the sum of $3,000.00, and the appellant, apparently as principal, with her husband, Dr. Brady, as surety, executed the note sued on, to the bank, for a like sum, and secured it by a pledge of the note, which the Cooperage Company, by Dr. Brady, had executed to her, and, also, by a mortgage upon her real estate, consisting of two pieces of property in the town of Greenup, and as a further security, for the payment of the note, Dr. Brady put in pledge with the bank the diamond ring. The diamond ring, however, he subsequently borrowed from the cashier of the bank and never returned it. At the time of these transactions, the Cooperage Company was in reality in precarious circumstances, although, at the time the note sued on was executed, and the other transactions had, Dr. Brady seems to have been very optimistic as to the prospects of his partnership and was of the opinion, that the assets of the Cooperage Company could be so handled and disposed of, that it would be able to discharge all of its obligations, including the note executed by it to appellant. However, on the 5th day of April, after the transactions above recited occurred on the 21st day of March, certain creditors of the Cooperage Company took proceedings to have it declared an involuntary bankrupt, and for a sale and distribution of its assets to its creditors. The proceedings resulted in its being adjudged a bankrupt, and a sale and distribution of the assets. The appellant presented the $3,000.00 note, which she held against it, as a debt of the bankrupt partnership, by permission of the bank, which permitted it to be withdrawn for that purpose. The assets of the partnership only paid between ten and fifteen per centum of its indebtedness, and the *pro rata* portion set apart to the note, which it had executed to appellant, was $291.00. The trustee of the bankrupt estate made out a check payable to appellant for that sum and sent it to her by mail. She seems to have received it and delivered it to her husband, and he declining to turn it over to the bank to be applied as a payment upon the note sued on, the bank filed in the bankruptcy proceedings a petition setting forth its lien upon the proceeds of the note, which had been filed by appellant as a debt against the estate,

and she not controverting the petition, the $291.00 was ordered to be paid to the bank, which was done. At the sale of the property of the Cooperage Company, the bank purchased the real estate of the partnership in satisfaction of its debt of $4,500.00, which was secured by a mortgage upon the real estate, and the directors of the bank, with the exception of Cole, as individuals, purchased the personal property of the partnership for six or seven thousand dollars. These individuals, thereafter, organized a corporation, called the Little Sandy Cooperage Company, for the purpose of utilizing the personal property, which they purchased, as above recited. The capital stock of the corporation was divided into one thousand shares of one dollar each. The appellant was one of the incorporators of this corporation, and two hundred shares of the capital stock were issued to her. The owners of the personal property of the Greenup Cooperage Company turned over such property to the corporation, and the bank sold and transferred the real estate, which it had purchased, to the corporation. Dr. Brady agreed to act as manager for the corporation without compensation. The appellant does not appear to have paid or furnished anything for the stock, which she received, but it was issued to her upon the condition, that she would pledge same to the bank, as additional security, for the note sued on, which she thereafter did. Doubtless, the giving to her of the stock was on account of the services Dr. Brady promised to the corporation and possibly to better enable the appellant to discharge the note sued on. These matters, however, are not clear from the evidence, neither does it appear what became of the corporation, or whether it is still in existence, or whether any dividends have ever been paid upon the stock, but it seems, that after a time Dr. Brady ceased to give the business any attention.

On the 23rd day of April, 1911, the bank transferred the note, with its remaining securities, to the appellee, Equitable Trust Company, of Dover, and thereafter, on October 26, 1911, the appellee instituted this suit against appellant and her husband, Dr. Brady, and sought a personal judgment against them for the amount of the note and its accrued interest, and an enforcement of the mortgage lien upon the real estate of appellant, and the lien upon the two hundred shares of stock in the Little Sandy Cooperage Company to satisfy the personal judgment.

The appellant offered as defenses to the action, that the note and mortgage were without consideration, as to her; that she was induced to execute and deliver them by duress, imposed upon her by the bank, and by fraud and misrepresentation on the part of the bank. Dr. Brady alleged and plead a discharge in bankruptcy from the obligation. The court adjudged that Dr. Brady's plea of a discharge in bankruptcy relieved him of obligation upon the note, and there is no cross-appeal from that decision. The court, however, adjudged, that the appellant was personally bound upon the note, and rendered a judgment against her for the amount of the note, with its accrued interest, and that the mortgage lien upon her real property be enforced, as well as the lien upon the stock of the Little Sandy Cooperage Company, and that a sufficiency be sold to satisfy the judgment, and that execution of *fieri faci* might be taken against her for any unsatisfied portion of the judgment, after the enforcement of the liens. From this judgment Mrs. Brady has appealed.

(a.) A personal judgment should not have been rendered against the appellant. When sections 2127 and 2128, Kentucky Statutes, are construed together, they do not authorize a married woman to assume the debt of her husband or any one else, so as to be personally bound thereon. A married woman, before the enactment of these statutes, could not bind herself personally as a security. The statutes, *supra,* construed together do not authorize her to do so. The only way in which she can bind herself "to answer for the debt, default or misdoing of another, including her husband," is to create a lien upon her property to secure the undertaking, "by a deed, mortgage or other conveyance." She can not assume her husband's debt, nor contract to answer for it, except in the way designated by the statutes. If she becomes the surety of her husband, in the ordinary way, by signing a note with him, as his surety, she is not bound. If she signs a note, as a surety for her husband's debt, and in addition, executes a mortgage upon her property to secure the payment of the debt, she will not be bound personally upon the note, though the mortgage lien may be enforced and her property subjected to the payment of the debt. Tipton v. Bank, 17 R. 960; Morrison v. Morrison, 21 R. 1033; New Farmers Bank v. Blythe, &c., 53 S. W. 409. A married woman may, on her

own account, borrow money or assume liability, and if she does so, she will be personally liable and her property may be subjected to the debt or liability, but the statute prohibits her from assuming a liability to pay another's debt, or to contract to be bound as surety for another, unless in the way pointed out by the statute. It has, also, been held, that a married woman is not liable upon a note executed by her to pay a husband's debt, or if a husband's debt is included in a note executed by a married woman, she is not liable upon the note for as much of it as constitutes the debt of the husband. Deposit Bank v. Still, 107 Ky. 49; Milburn v. Jackson, 21 R. 700; 52 S. W. 949; Russell v. Rice, 19 R. 1613. Whatever may be the form of a transaction, if it appears that a married woman is in reality a mere surety, she will not be held liable, unless she has bound herself in the way provided by statute. As said in Hart v. Bank of Russellville, 127 Ky. 424:

"In transactions of this kind the courts must look to the substance and whatever the parties themselves may designate or name the undertaking of the wife, if in fact, it be an attempted assumption by her of the debt of another, she must be held not liable, unless she binds herself in the statutory way. Any other course will speedily result in a nullification of the statute."

It was said in Hines v. Hays, 82 S. W. 1007:

"This court in such transactions will look to the substance and not to the form, and if it appear that the form of the transaction was a mere subterfuge to evade the statute, and that the wife was a mere surety, in fact, she will not be held liable."

This is especially true where the payee in the note knows that the wife is a mere surety. Tompkins v. Triplett, 110 Ky. 824; Swearengen's Exor. v. Tyler, 137 Ky. 465; Third National Bank v. Tierney, 128 Ky. 836; Postell v. Crumbaugh, 23 R. 2193; Hart v. Bank, *supra.* The transaction in which the note sued on was executed, when stripped of its camouflage, shows indisputably, that the debt for which the note was executed was that of Dr. Brady and not that of appellant. The debt was that of the cooperage company for which Dr. Brady was bound. It is true, that the cooperage company, by Dr. Brady, executed to her a note for $3,000.00, but it was pledged as collateral for the note sued on. Dr. Brady, it will be remembered, also, pledged his valuable

diamond ring as security for the note. It is true, that the note sued on was executed by appellant apparently as principal, with her husband, who, also, signed it as surety. This circumstance does not, however, preclude the court from determining that Dr. Brady was principal in the note and not surety, as it may be determined in such a transaction as this, where the payee knew that Mrs. Brady was only surety, from parol testimony or the facts of the case, that Mrs. Brady was surety and not principal. The facts of this case show very clearly, that the debt was that of Dr. Brady, and that he had previously received the entire consideration for which the note was executed. Hart v. Bank, *supra*; Skinner v. Lynn, 51 S. W. 167; Bank v. Gaines, 87 Ky. 601; Emmons v. Overton, 18 B. M. 648; Lewis v. Harbin, 5 B. M. 564; Black v. McCarley's Ex'or, 31 R. 1198. Hence, it is concluded, that the note was the obligation of the husband and for his debt, although the wife appears to have signed it as principal, and for such reason the appellant was not personally bound upon it. She was, however, authorized by the provisions of the statute, section 2127, *supra,* to put her property in pledge as security for the payment of the note, by executing a mortgage upon it for that purpose, and this she seems to have done simultaneously with the execution of the note, her husband joining with her in the execution of the mortgage. It has been well settled for a long time, that a married woman and her husband may secure debts due by the husband by the execution of a mortgage upon her property, and the conveyance will be binding upon her if voluntarily made and fairly understood. Bowrom v. Curd, 28 R. 58; Miller v. Sanders, 98 Ky. 535; Lane v. Trader's Bank, 14 R. 873; Tipton v. Trader's Bank, 17 R. 960; Wirgman v. Miller, 98 Ky. 625; Morrison v. Morrison's Assignee, 24 R. 340.

(b.) The contention, that there was no consideration for the execution of the mortgage is not tenable. A consideration, in a legal sense, sufficient to uphold a contract may be a benefit to the promissor or a loss, forbearance or detriment suffered by the promisee. Akers v. Phillips, 58 S. W. 790; First State Bank v. Morton, 146 Ky. 293. To make a binding obligation, it is not necessary that some benefit should accrue thereby to the obligor. It is sufficient if the obligee suffers some detriment or prejudice. In 9 Cyc. 311, the text is:

"Indeed, there is a consideration if the promisee in return for the promise does anything legal, which he is not bound to do, or refrains from doing anything, which he has a right to do, whether there is any actual loss or detriment to him or actual benefit to the promisor or not."

The same rule is declared in 6 R. C. L. 69. In the instant case, in the transaction in which the note was executed, and from all the facts and circumstances of the case, it is apparent, that in consideration of the execution of it, the bank, to whom it was executed, released its debt against the cooperage company, to the extent of the amount of the note sued on, and parted with its right of action against the cooperage company for the entire debt. Besides, the execution of the $3,000.00 note by the cooperage company to the appellant was a virtual transfer of the bank's debt to her, from which it was expected, at the time, that she could recoup herself for any loss by reason of the undertaking to the bank, and, although the note was filed as collateral security for the note executed by her, she had the legal right to discharge her debt and retain the one against the cooperage company. Further, from the circumstances and facts of this case, those not recited, as well as those recited, the conduct of the parties and the nature of the transaction, a promise not to sue by the bank, for a reasonable time, upon the debt against Dr. Brady could be implied, and the transaction was followed by a forbearance to sue for more than four years.

(c.) The only basis for the claim by appellant, that she was compelled by duress, imposed upon her, to execute the mortgage was, that she had received information through her husband, that threats had been made to the effect, that he would be prosecuted with reference to the overdraft in the bank by the cooperage company. There is no legal evidence in the record, which shows that any person interested in the bank, to whom the mortgage was given, at any time, made any threat of prosecution against Dr. Brady, and the most, which the doctor testifies himself was said, with reference to that matter was the expression of fear on the part of Literal, that he and the doctor would both suffer prosecution, and that Cole, one of the directors of the bank, said in his presence, that he was liable to be prosecuted. This, however, the director, Cole, denies having said, and the

doctor is not corroborated in any way. It is very apparent, however, that the doctor is not a competent witness, if the appellant elected to testify in her own behalf. There is no evidence of any character, that any one interested in the bank ever made any threat to prosecute Dr. Brady or attempt to do so, and no one connected with the bank as an officer or director or otherwise had any communications or negotiations with the appellant in relation to the execution of the mortgage. The rule bearing upon such a state of case is stated in Fears v. United Loan & Deposit Bank, 172 Ky. 261, as follows:

"It is well settled, that duress will not avail as a plea to avoid a contract, unless the one, who is seeking to enforce the contract, or an agent of his, imposed the duress; or that it was done with his knowledge and was taken advantage of by him for the purpose of obtaining the contract. Ely v. Hartford Life Insurance Co., 128 Ky. 808; Long v. Branham, 30 R. 352; Hall v. Hall, 118 Ky. 656; 9 R. C. L. 729; Fightmaster v. Levy, 13 R. 412."

(d.) Touching the defense to the effect, that the execution of the mortgage was procured by fraudulent representations upon the part of the officers or directors of the bank, it is again repeated, that the negotiations which went on for the execution of the mortgage were all by Dr. Brady with the appellant, and there was no conversation or negotiation of any kind between the appellant and any officer or director of the bank, except that the appellant testifies, that when she came to execute the mortgage, Kinner, the president of the bank, and Literal, the cashier, and Hoffman, a director, were present, and she thinks this occurred in the county clerk's office, at Greenup, and on this occasion, that she was assured by Kinner, that the execution of the mortgage was not intended to injure her, but was for the purpose of protecting her, and being thus assured, that she consented to its acknowledgment, and in this statement she is somewhat corroborated by the notary, who took her acknowledgment, except that the notary states that it was done at the banking house. All of this is very positively denied by Kinner, Hoffman and Literal, who testify, that the mortgage was not acknowledged in their banking house, and that neither of them was present at the time of its acknowledgment, and that neither of them ever said anything to appellant with regard to it. They, also, testify, and in addition to them, the other

director, Cole, says that the mortgage and note were taken by Dr. Brady from an attorney's office, when they were all present, and carried away, and that in a short time thereafter he returned with them signed and acknowledged by the appellant. The chancellor below, from the testimony, was of the opinion that no fraud was practiced upon appellant in procuring her to execute the mortgage, and there does not seem to be any reason for disturbing his judgment upon that subject. The mortgage was executed on the 21st day of March, 1907, and this action was instituted upon it on the 26th day of October, 1911, and, up to that time, it does not appear, that the appellant had ever complained that she had been overreached by duress or fraud to execute the mortgage, and long after its execution, she had participated in causing the note, which was executed by the cooperage company to her to be filed with its assignee, and had likewise participated in the organization of the Little Sandy Cooperage Company, and had pledged the stock, which she had received, in it, as a further security of the note sued on, without any complaint, that she had suffered any wrong in regard to the matter, and without any claim, as far as the record shows, that she had executed the mortgage, other than voluntarily and after a fair understanding of its purpose and import.

(e.)   Complaint is made of the matter of calculating the interest, which was added to the face of the note and constituting the amount for which the judgment was rendered, but if so, this was only a mere clerical misprision, and no motion was made to correct the judgment in the court below before the appeal was taken from the judgment. Sections 519 and 763, Civil Code.

It is, therefore, ordered that the judgment, so far as a personal judgment is rendered against the appellant, be reversed, but that the judgment otherwise be affirmed, and the cause is remanded for proceedings consistent with this opinion.