## Kelemen v. Citizens' Bank of Cumberland's Liquidating Agent.

(Decided April 23, 1935.)

B. M. LEE for appellant.

J. B. SNYDER for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER— Affirming.

The Citizens' Bank of Cumberland, formerly engaged in the banking business at Cumberland in Harlan county, Ky., has for some months been in the process of liquidation. This action was instituted by the special deputy banking commissioner and liquidating agent who has had charge of the bank for the purpose of liquidation against Andrew Kelemen and Anna Kelemen, husband and wife, seeking to recover on three notes which it is alleged they executed and delivered to the bank, one for $340, one for $700, and another for $1,145.

By amended petition John L. Creech was made a party defendant, and it was alleged that upon the execution of the note for $1,145 he became indorser thereon, but, by mistake and oversight of the draftsman of the petition, he was not made a party defendant in the original petition.

By answer Mr. and Mrs. Kelemen alleged that at the time the $340 and $700 notes sued on were executed, they were husband and wife; that Anna Kelemen did not receive any consideration for the signing of the notes nor any of the proceeds thereof, but that the proceeds went to Andrew Kelemen, and that she signed the notes at the request of her husband and merely as a

294

surety, although her name appears first on each of them; that the Bank of Cumberland had her name placed on the notes first for the purpose of trying to evade the statute exempting married women from liability as surety, and knew at the time they accepted the notes that she was not receiving any part or consideration therefor. No allegation was made in the answer respecting the $1,145 note, and it appears that it has been paid and is not now involved in this action.

By reply, plaintiff traversed the affirmative material allegations of the answer and further set up certain acts and conduct on the part of Anna Kelemen as an estoppel against her claim that she signed the notes merely as surety for Andrew Kelemen.

Defendant Andrew Kelemen having made no defense to the petition as against himself, judgment pro confesso was entered against him for the amount of the two notes with interest. Trial before a jury resulted in a verdict against Anna Kelemen, and from a judgment entered in conformity with the verdict she is appealing.

The evidence shows that Mrs. Kelemen owned a building in Cumberland having two storerooms on the first floor and other rooms on that or the second floor, or both, which she and her husband occupied as a residence. It appears that the $1,145 note was executed for materials that entered into the construction of the building. A business was conducted in one of the storerooms in the name of Andrew Kelemen; however, Mr. Kelemen was in the store very little of the time, but was out selling goods at other places. Mrs. Kelemen had charge of the store and looked after the banking business which was done at the Citizens' Bank of Cumberland. They had but one account, and this was carried in the name of Andrew Kelemen. Mrs. Kelemen rented one of the storerooms for which she received from $40 to $60 per month, and this was deposited to the account in the name of her husband. She testified that the money was borrowed to pay accounts for merchandise purchased for the store; that the proceeds of the notes were credited to the account run in the name of her husband and was checked out for such purposes. Mr. Kelemen was not present at the bank when the notes were executed, nor does it appear that he had had any communication or arrangements with the bank concerning the borrowing of the money. Mrs. Kelemen

testified that she went to the bank and executed the notes, and the proceeds were placed to the credit of her husband, and that she received no part thereof. Mrs. Kelemen signed all checks against the bank account and in some instances would sign "A. Kelemen" or "Andrew Kelemen," by "A. Kelemen" or "Anna Kelemen" and in some instances she would merely sign "Andrew Kelemen." When asked how it happened that she signed her husband's name and her own on the notes, she said it was because he was at Lynch; that he never went to the bank, but always gave the money to her to take to the bank and to do all the business. Andrew Kelemen was called as a witness and testified that his wife looked after the store and he authorized her to arrange at the bank to get money and sign his name on the notes. He testified also about his bank account and some other matters concerning other business he was conducting.

At the close of his evidence the plaintiff moved to strike from the record the entire evidence of Andrew Kelemen on the ground that he was the husband of the defendant Anna Kelemen. The court sustained plaintiff's motion and excluded all the evidence except the statement of the witness that he authorized his wife to sign his name to the notes in question.

The liquidating agent who was the cashier of the bank when the notes were executed testified that both were signed by Mrs. Kelemen and Mr. Kelemen was not present; that Mrs. Kelemen looked after all the business and deposited her own checks to the account run in the name of her husband. When asked what was said by her when the notes were executed, he started in to tell what she would generally say, but the court would not permit him to testify except as to what she said at the time the notes were signed, and he then stated that he could not recall what was said at that particular time.

It is first argued by counsel for appellant that the court erred in excluding the testimony of Andrew Kelemen from the jury because no objection or exception was taken at the time he was introduced as a witness, or before he gave his evidence, and Hembree v. Commonwealth, 210 Ky. 333, 275 S. W. 812, and Alder v. Commonwealth, 215 Ky. 613, 286 S. W. 696 are cited as supporting this contention. In the Hembree Case, the wife was permitted to testify against her husband on a

charge of child desertion, and on appeal it was urged as grounds for reversal that the court erred in permitting her to testify. It was held that since appellant did not object to her testifying, he waived her competency as a witness. In the course of the opinion authorities are cited to the effect that, where a witness is incompetent to testify, the objection to his competency must be made when he is offered as a witness and before he is sworn, and if not made then, it is waived unless the ground of incompetency becomes apparent after the examination of the witness is commenced.

In the Alder Case the appellant had been convicted of murder, and on appeal there was complaint that a letter introduced in evidence was incompetent, but it was held that the complaint was not available because objection was not made when the letter was offered in evidence.

Certainly question concerning the competency of the evidence or of the witness could not be raised for the first time in motion for new trial, or on appeal, as was done in the cases relied on, and while the Hembree Case cited authorities indicating that objection should be made to the competency of the witness before the witness was sworn or permitted to testify, it was unnecessary to determine that question, because no objection was made in the court below during the trial in either of the cases. But even if the court had gone so far as to hold that in both civil and criminal cases objections should be made to the competency of a witness before he was sworn or permitted to testify, the rule would not apply here because under section 606 of the Civil Code of Practice exception is made to the provision that neither a husband or wife shall testify for or against the other when either is acting as agent for the other, in which event either of them may testify as to any matters connected with such agency. See Edwards v. Citizens' Saving Bank, 244 Ky. 508, 51 S. W. (2d) 661. Appellant herself claimed to be acting as agent for her husband, and he also testified that she was. Each was a competent witness as to matters concerning the agency and objection to his competency as a witness would have been of no avail. However, he was not competent to testify concerning other matters involved, and the court, upon seasonable objection, properly excluded such evidence.

It is next urged that the court erred in not sustaining appellant's motion for a peremptory instruction because she was merely surety for her husband and could not be held bound as such under the provisions of section 2127, Kentucky Statutes, and as supporting this theory counsel cite and rely on the cases of Oatts v. First National Bank of Somerset, 244 Ky. 635, 51 S. W. (2d) 952 and the cases therein cited. In the Oatts Case the evidence established that the negotiations leading up to the loan for which the original notes were executed were conducted by the husband, the wife not being present, and that the proceeds of the notes were at once put to the credit of the husband and checked out by him.

In the case of Simmons v. Maxey, 242 Ky. 728, 47 S. W. (2d) 530, cited in the Oatts Case, Maxey proposed to sell a drug store to Simmons and they went to the attorney to have the contract written and stated to the attorney that Simmons did not have any money, and that his wife was going to sign the notes as surety. The attorney advised them that she could not bind herself as surety, so it was agreed that a contract be drawn up selling the property jointly to Mr. and Mrs. Simmons. It was held in effect that, although the sale was made to the husband and wife jointly, the payee knew the wife was not a purchaser, but merely surety for her husband, and that the change was made in the contract as a mere technical arrangement to avoid the effect of the statute. The opinion quotes with approval from Crumbaugh v. Postell, 49 S. W. 334, 335, 20 Ky. Law Rep. 1366, which was cited in the Oatts Case and wherein it is said:

"In transactions of this kind the courts must look to the substance; and, whatsoever the parties themselves may designate or name the undertaking of the wife, if in fact it be an attempted assumption by her of the debt of another she must be held not liable, unless she binds herself in the statutory mode."

In the case of Hines & Co. v. Hays, 82 S. W. 1007, 26 Ky. Law Rep. 967, cited in the Oatts Case, Hines desired to borrow money from a bank and offered his mother and brother as sureties. The officers of the bank refused to take the mother as surety because she could not bind herself in that capacity, but informed Hines that he could make the note with his mother as

principal and his brother as surety, and this was done. The proceeds of the note were placed to the credit of the mother, and she gave her son a check for the money. This court held that the mother was not bound because the bank knew in fact that she was surety and had her sign the note as principal as a subterfuge to evade the provisions of the statute preventing married women from binding themselves as surety.

Here an entirely different situation is presented. The husband was not even present; the wife transacted all the business. Under section 2127 of the Statutes, a married woman may borrow money just the same as an unmarried woman, and she may borrow for the use and benefit of her husband. However, if it be made to appear that the transaction is merely a scheme or subterfuge to evade the provisions of this statute, she will be treated as a surety and relieved of liability. Edwards v. Citizens' Savings Bank of Paducah, supra.

In the case of Scott v. First National Bank of Pikeville, 221 Ky. 297, 298 S. W. 949, 950, it appears that Scott was the principal stockholder in a corporation which was indebted to the bank in the sum of $12,500, and he applied to the president of the bank for an additional loan, which was denied on the ground that the company had exhausted its credit and that he, as indorser of the paper, had also exhausted his credit. He testified that it was suggested that the loan might be arranged by handling the note through outside parties, and his wife was mentioned in that connection, and she did sign a note and authorized her husband to obtain the loan upon her credit. When the note was mailed to the bank, it was accompanied by the check for the amount of the proceeds drawn by Mrs. Scott in favor of the corporation and indorsed by it. A judgment in favor of the bank was affirmed and in the course of the opinion it was said:

"This act [referring to section 2127, Kentucky Statutes] has been given a liberal construction by the courts who do not permit its beneficent purpose to be frustrated by any subterfuge or artifice. And, whenever it appears that the real purpose of the transaction is to secure the debt of another, the statute is applied, regardless of the form of the paper which is executed. But, aside from this and some other exceptions not in point here, the stat-

ute recognizes the right of a married woman to borrow and loan money and to transact business generally, and, if she suffers in so doing, she must abide the consequences."

In the recent case of Redmon v. First National Bank of Paris, 256 Ky. 659, 76 S. W. (2d) 933, 936, where a married woman was defending on the ground that she signed a note as surety, it was said after referring to the holding in another case:

"In those opinions, and others that we will hereinafter cite, it was likewise said that the statute did not prevent a married woman from borrowing money on her own credit and turning it over to another, or consenting for it to be done, to be used and employed by such one as he might deem proper, since in that event the vice and evils sought to be cured by the statute would not exist."

Measuring the evidence for appellant by the standards fixed by the foregoing authorities, it is apparent that the court did not err in refusing to direct a verdict in her favor, and it is equally apparent that she failed to successfully meet the burden of establishing her defense that she signed the notes merely as surety.

It is finally argued that the court erred in refusing to give instructions offered by appellant, and that the instructions given by the court were erroneous. Under the instructions given, the jury could not find for appellee if they believed from the evidence that the notes were signed by appellant as surety for Andrew Kelemen, nor could they find for appellee if they believed the notes were signed for the sole benefit of Andrew Kelemen. Since, as has been universally held by this court, a wife may borrow money for the benefit of her husband or of another, it will be seen that the instructions complained of were favorable rather than prejudicial to appellant.

Judgment affirmed.