## Clark County Nat. Bank v. Allen.

(Decided Jan. 21, 1936.)

BENTON & DAVIS and V. W. BUSH for appellant.

JOUETT & METCALF for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

This appeal presents the question whether Mrs. J. K. Allen, is liable on a note signed by her, or exempt from liability under the provisions of section 2127, Kentucky Statutes; she being a married woman at the time she signed the note. That section of the Statutes reads:

"Marriage shall give to the husband, during the life of the wife, no estate or interest in the wife's property, real or personal, owned at the time or acquired after the marriage. During the existence of the marriage relation the wife shall hold and own all her estate to her separate and

exclusive use, and free from the debts, liabliities or control of her husband. No part of a married woman's estate shall be subjected to the payment or satisfaction of any liability, upon a contract made after marriage, to answer for the debt, default or misdoing of another, including her husband, unless such estate shall have been set apart for that purpose by deed of mortgage or other conveyance; but her estate shall be liable for her debts and responsibilities contracted or incurred before marriage, and for such contracted after marriage, except as in this act provided.''

The history and facts of the case are, in substance, these:

On March 31, 1930, J. B. Allen purchased from J. C. Scobee 103 head of cattle, and in payment therefor he executed his note due six months from date for $8,075 with a mortgage on the cattle with his father, J. K. Allen, as surety. At that time J. C. Scobee was indebted to the Citizens National Bank of Winchester, Ky., and to further secure same he pledged to the bank the J. B. Allen note as collateral. The J. B. Allen note matured September 30, 1930, but it was provided in the mortgage executed to secure it that it might be extended another six months or until March 31, 1931. It appears that the bank called on J. C. Scobee to pay or renew the note, and Scobee in turn called on J. B. Allen for a payment on the note; he (Scobee) insisting that J. B. Allen had sold some of the cattle mortgaged to secure the note and was neglecting to properly care for the others, and he became concerned about the sufficiency of the cattle to secure the note, and insisted that Allen pay at least one-half, or $4,000, on the note.

Allen being unable to raise the money, on November 26, 1930, J. C. Scobee went to R. M. Scobee, president of the Citizens National Bank, and asked him if his bank would make a loan of $4,000 to Mrs. J. K. Allen. It appears that J. B. Allen and J. K. Allen were insolvent, but Mrs. J. K. Allen, wife of J. K. Allen and mother of J. B. Allen, owned a 70-acre farm in her own right and was solvent. R. M. Scobee told J. C. Scobee that he would make the loan to Mrs. Allen on certain conditions. For clarity we set out those conditions in the language of R. M. Scobee taken from the bill of evidence:

"A. I didn't state to Mr. Allen about what we would do about it. J. C. Scobee first came to me and wanted to know if Mrs. J. K. Allen could borrow $4,000, there, and I said yes, she could under certain conditions; and he said that she wanted to pay it on this $8,500 or $8,075 note that the Citizens National Bank held as collateral on his note there, and I said, 'The only way she can borrow money would be to make her note for it and we will deposit the money to your credit in a savings account, and in order to secure the whole matter, we will have you to draw a check on your savings account and pin it to Mrs. Allen's check as collateral—

"Q. Mrs. Allen's check? A. Mrs. Allen's note. And that was done and the check on the savings account is now at the Clark County National Bank. * * *"

In conformity with these arrangements, a note for $4,000 and a check were prepared at the bank and delivered by it to J. K. Allen to take to Mrs. Allen for her signature. Mrs. Allen signed the note on the first line and J. K. Allen and J. B. Allen signed on the next lines under her name. Mrs. Allen also signed the check payable to J. C. Scobee, and J. K. Allen took both the check and note to the bank, and the proceeds of the note was placed to Mrs. Allen's credit and then charged to her account on the check, which balanced the same. However, previous to this time, Mrs. Allen had no account with the Citizens National Bank. J. K. Allen indorsed the check over to J. C. Scobee as part payment on the note of $8,075 which J. B. Allen had executed to Scobee for the cattle, and, pursuant to the agreement between Scobee and the bank, the proceeds of Mrs. Allen's check was then deposited to the credit of J. C. Scobee on savings account on which he drew his check and pinned it to the note signed by Mrs. Allen as collateral, and applied it as a credit on the J. B. Allen note, leaving a balance of $4,075.

J. C. Scobee then renewed the note of J. B. Allen by taking a new note for $4,075, and the bank took a second mortgage on the 103 head of cattle as security on the $4,000 note signed by Mrs. Allen. By this arrangement the bank then had the $4,000 note signed by Mrs. Allen secured by a cash savings account of $4,000

and a second mortgage on the same cattle on which J. C. Scobee had a first mortgage. On March 30, 1931, renewals of the $4,075 J. B. Allen note to J. C. Scobee and the $4,000 note signed by Mrs. Allen were prepared and signed by the parties and the $4,075 note of J. B. Allen to J. C. Scobee was again assigned by Scobee to the Citizens National Bank. Both notes fell due on July 30, 1931, and the $4,075 J. B. Allen note was again renewed to J. C. Scobee to the bank on August 30, 1931, but, before the $4,000 note signed by Mrs. Allen was renewed, the Clark County National Bank, plaintiff below, and appellant on this appeal, purchased the assets of the Citizens National Bank on August 22, 1931, including the note signed by Mrs. Allen, which was not renewed to the appellant bank until February 9, 1932, with the following notation: "Renewal note—Citizens Nat'l Bank, Winchester, Ky." When the appellant, Clark County National Bank, purchased the Citizens National Bank's assets on August 22, 1931, the $4,000 note signed by Mrs. Allen was shown as having matured on July 30, 1931, with a savings account of $4,000 pledged as collateral, with a notation on the account sheet as follows:

"Nov. 1—1931—$4,080.00 Do not pay anything on this a/c until the note is paid, this secured by this money."

When the renewal note of February 9, 1932, to the appellant bank became due, the Clark County National Bank instituted this action against Mrs. J. K. Allen, J. K. Allen, J. C. Scobee, and J. B. Allen to recover of them on the note and to foreclose its mortgage on the personal property mortgaged to secure it.

Appellant, plaintiff below, sued on the renewal note of February 9, 1932, but alleged that it was a renewal of the $4,000 note which Mrs. Allen executed and delivered to the Citizens National Bank on November 26, 1930, and alleged that said notes were executed by Mrs. Allen for a valuable consideration. Mrs. Allen filed her separate answer, denying that she executed said note or notes for a valuable consideration, and further pleaded that she signed same as surety only, at which time she was a married woman, the wife of J. K. Allen, and that same was void under the provisions of section 2127, Kentucky Statutes, and further pleaded appellant bank purchased the note after maturity. She alleged that

she was not present when the transactions between the bank, her husband, son, and Scobee took place, and knew nothing about same until her husbad presented her with the note with the request that she sign it and told her that the proceeds of it were to be applied to the payment of $8,075 note of her son and husband to J. C. Scobee then held by the Citizens National Bank. The appellant filed its reply by which it pleaded that Mrs. Allen was now estopped to deny liability on the note because of her renewal of it to appellant bank February 9, 1932, and after it had purchased it from the Citizens National Bank. By subsequent pleadings, the issues were made, and by agreement of the parties the case was tried by the court without the intervention of a jury. The evidence was taken and the court entered judgment for appellant against J. K. Allen, J. B. Allen, and J. C. Scobee, but disallowed any recovery against Mrs. Allen and dismissed the petition as against her, and to reverse that judgment the bank has appealed.

Mrs. Allen testified that the note was presented to her by her husband, J. K. Allen, who told her that Mr. Foote (cashier of the bank) ''said he would let us have the money if I would sign it as surety—go surety,'' and said that they wanted to hold it and use her as security to hold the cattle. She testified that at the time she signed the note she also signed the check for the same amount payable to J. C. Scobee and delivered both the check and note to her husband and understood at the time that it was to be applied on the payment of the debt of her husband and son, and that she did not receive any of the proceeds of the note or other consideration.

R. M. Scobee, president of the bank, testified that J. C. Scobee came to him and asked him if he would make a loan of $4,000 to Mrs. Allen, and he told him he would do so upon certain conditions, and stated the conditions as herein above set out.

Mrs. Allen made no application for a loan or did anything but sign the note and check, which were prepared at the bank in her absence and without her knowledge, and which were presented to her by her husband and signed by her under the circumstances testified to by her. There is no material conflict in the evidence. It is shown by the evidence that all parties concerned

understood that the proceeds of the note which Mrs. Allen signed were to be applied to the payment of the debt of her son and husband.

The sole question for our consideration is whether the trial court erred in his application of the law to the facts. Plaintiff alleged that Mrs. Allen signed the notes for a valuable consideration. She admitted signing the note and said she thought she was signing it as surety only, but denied any consideration therefor. Even though a writing imports a consideration or consideration may be inferred from the nature of the writing, if the plaintiff sets out a consideration and it is denied, he must prove it. Coons v. Bank of Commerce, 233 Ky. 457, 26 S. W. (2d) 15.

It is insisted in brief of appellant that Mrs. Allen was interested in forestalling a foreclosure of the mortgage on the cattle of her son, and that the cattle being grazed upon her farm for the common benefit of all, furnished sufficient consideration for signing the note. It is shown conclusively that Mrs. Allen was not a partner with her son and husband in the transaction between them and J. C. Scobee in purchasing the cattle and she had no property rights therein and was receiving no pay for grazing the cattle on her farm. We do not think these facts sufficient to furnish a consideration. Thus we have the situation of a married woman signing a note for a loan of money to be applied to the payment of the debt of another. Like and similar cases have been decided by this court with relation to section 2127 of the Kentucky Statutes relied on by Mrs. Allen as a defense to her liability on the note.

In Farmers' Bank of White Plains v. Williams, 205 Ky. 261, 265 S. W. 771, Mrs. Williams was a married woman when she signed the note there in controversy, and, after the death of her husband, she renewed the note. It was insisted for the bank that, even if she were only surety on the notes, there was a sufficient new consideration to bind her on the renewal notes which she signed when free from disability. In rejecting that argument, the court said:

> "The general rule is that a contract of suretyship of a married woman is not merely viodable, but void, and cannot be ratified. When her disabilities are removed, and then only, on sufficient new con-

sideration can she become bound, and this is true whether such disabilities are removed by statute or through dissolution of the marriage covenant, as by death of the husband. Ruppel v. Kissel, 74 S. W. 220, 24 Ky. Law Rep. 2371; Holloway v. Rudy, 60 S. W. 650, 22 Ky. Law Rep. 1406, 53 L. R. A. 353; Robinson v. Robinson's Trustee, 11 Bush, 174; 30 C. J. 751.''

That case is stronger in favor of the bank than the present case, in that the widow renewed the note after her disability of coverture had been removed. But, in accordance with the general rule that a renewal note is not a new contract but a continuation of the original obligation, it was held that she was not liable on the renewal note in the absence of a new consideration. In the present case Mrs. Allen was still a married woman when she renewed the note, and there is no contention made that she received any consideration when she renewed it. If she was not liable on the original note, the renewal of it put her in no different position. To the same effect see Ruppel v. Kissel, 74 S. W. 220, 24 Ky. Law Rep. 2371. In the case of Crumbaugh v. Postell, 49 S. W. 334, 20 Ky. Law Rep. 1366, the note sued on was signed by Mrs. Crumbaugh, ''principal,'' and by her husband, ''surety.'' Mrs. Crumbaugh pleaded coverture as a bar to recovery, alleging that the debt was that of her husband. The pertinent facts and the law of the case are set out in that opinion as follows:

''It appears that Postell held the notes of the husband, with one Williams as surety, and the latter, desiring to be released, gave notice to Postell to bring suit thereon. The husband then proposed to Postell to give him his wife's notes in lieu of the old ones; and, upon Postell's consenting to the arrangement, he did obtain his wife's notes and deliver them to Postell, who thereupon surrendered the old notes to the husband. Postell had no conference or communication with the wife, and she made him no representations or gave him any assurances. [Ky. Stats., sec. 2127 follows.] It is admitted here that, under the terms of this statute, she is not liable; but it is claimed, and it was so held below, that she has been guilty of such fraudulent conduct as to estop her from relying on the statute made for her protection. There are no

disputed facts, and admittedly the only thing the wife did was to sign the notes at her husband's request. It is true the word 'principal' appears written after her name, and the word 'surety' after her husband's name; but this could not have deceiv-Postell. He knew this was not in fact the true state of case. In transactions of this kind the courts must look to the substance; and, whatsoever the parties themselves may designate or name the undertaking of the wife, if in fact it be an attempted assumption by her of the debt of another she must be held not liable, unless she binds herself in the statutory mode. Any other course will speedily result in a nullification of the statute."

See, also, H. C. Hines & Co. v. Hays et al., 82 S. W. 1007, 26 Ky. Law Rep. 967, which is very similar to the Crumbaugh Case, supra, both of which are very much in point with the case at bar.

In Brady v. Equitable Trust Co., 178 Ky. 693, 199 S. W. 1082, it was held that a married woman is not liable upon a note executed by her to pay a husband's debt, or, if the husband's debt is included in a note executed by a married woman, she is not liable upon the note for as much of it as constitutes the debt of the husband. See, also, Deposit Bank of Carlisle v. Stitt, 107 Ky. 49, 52 S. W. 950, 21 Ky. Law Rep. 671.

For further authority on the question here under consideration see the following cases: Bank of St. Helens v. Mann's Ex'r, 226 Ky. 381, 11 S. W. (2d) 144; Oliver v. Noe, 232 Ky. 809, 24 S. W. (2d) 592; People's Bank v. Baker, 238 Ky. 473, 38 S. W. (2d) 225; Simmons v. Maxey, 242 Ky. 728, 47 S. W. (2d) 530; Farmers' Bank of Wickliffe v. Beck (Ky.) 114 S. W. 1189; Smith v. First National Bank of Pikeville, 243 Ky. 716, 49 S. W. (2d) 538.

Another important feature of the transaction here involved is that the bank agreed to make the loan on the note when signed by Mrs. Allen, on condition only that the proceeds of the note be placed to the credit of J. C. Scobee (creditor of J. K. Allen and J. B. Allen) on saving account and be held as collateral security to Mrs. Allen's note, and the same sum ($4,000) was credited on the note of J. B. Allen to J. C. Scobee, which note the bank also held as collateral to secure certain

other indebtedness of Scobee. This arrangement of itself is conclusive that the effect of the transaction was to use Mrs. Allen's credit for the benefit of the indebtedness of her husband and son to Scobee and the bank. To hold Mrs. Allen liable on the note would be to permit a circumvention and evasion of section 2127, and therefore defeat the very purpose for which it was designed.

Furthermore, it appears in the record that the appellant bank purchased the note of the Citizens National Bank after maturity. Even though the note be not void ab initio, the fact that it was purchased after maturity left available to Mrs. Allen any defense which she could have made to the original note as against the Citizens National Bank. Ky. Stats., sec. 3720b-58; Austin v. First National Bank of Scottsville, 150 Ky. 113, 150 S. W. 8; 8 C. J. p. 443, sec. 656, p. 569, sec. 793, and notes thereunder; Greenwell v. Haydon, 78 Ky. 332, 335, 39 Am. Rep. 234; First National Bank of Jackson v. Carpenter, 237 Ky. 708, 36 S. W. (2d) 343. Appellant cites certain cases in support of its contention that Mrs. Allen is liable on the note, and especially relies on the case of Cawood v. Madison Southern National Bank & Trust Co., 251 Ky. 637, 65 S. W. (2d) 734. But we cannot agree that the facts in that case are similar to the ones in the present case. In the Cawood Case, G. D. Blevins applied to the bank for a loan of $1,500 and offered his mother as surety on the note. He was informed that the note would not be acceptable, and he then stated to the officer of the bank to whom he applied for the loan that he held a number of accounts against different individuals in Harlan, Ky., and that he would place them as collateral security to the note of himself and his mother. The officer of the bank told him that the bank did not accept open accounts as collateral to its notes, but, if he would convert his accounts into notes duly executed by his creditors, the bank might accept them as collateral, provided it satisfied itself of the solvency of the makers of such notes. Blevins returned later and presented the bank a note executed to himself by Mrs. Cawood, whereby she agreed and promised to pay him one year after date the sum of $1,500, which note was signed by herself alone. The bank accepted the note as collateral and made Blevins the loan. The note not having been paid at maturity, the bank brought suit against Blevins and Mrs. Cawood, and the

latter defended upon the ground that she was a married woman at the time she signed the note and signed it with the purpose of becoming surety only for G. D. Blevins on any note that he might execute to any one who would advance or loan to him that amount of money. She was held liable on the note. There was no showing that the bank knew the facts and circumstances under which she claimed to have signed the note, and accepted it in good faith believing that Mrs. Cawood was one of the creditors of Blevins who owed him an account as represented by him to the bank and that the note was executed by her in lieu of the account. Before the bank accepted the note, it made investigation with respect to her solvency, and was informed by the presidents of two banks of Harlan, Ky., that Mrs. Cawood was solvent. In the present case the bank knew the purpose for which Mrs. Allen signed the note and that the proceeds of same were to be applied to the debts of others. It will thus be seen that there is a fundamental distinction between the facts of the cases, and the Cawood Case is not authority in the present case.

The undisputed facts of this record measured to the authorities herein cited impel us to the conclusion that Mrs. Allen is not liable on the note, and the trial court did not err in so holding.

The judgment is affirmed.