# National Bank of Kentucky's Receiver v. Snead.

(Decided Feb. 23, 1937.)

ALFRED C. KRIEGER and LEE & KRIEGER for appellant.

TRABUE, DOOLAN, HELM & HELM for appellee.

OPINION OF THE COURT BY JUDGE REES—Reversing.

A. M. Anderson, receiver of the National Bank of Kentucky, brought this action against Myra Pearce Snead and her husband, Frank F. Snead, to recover on

a note for $3,000 executed and delivered to the bank on September 29, 1930. The note represented an indebtedness to the bank which had been running for several years, and for which renewal notes had been executed from time to time.

On August 28, 1925, Myra Pearce Snead and her husband, Frank F. Snead, executed and delivered to the bank their promissory note for $2,500, due four months after date. The proceeds of the note were placed to the credit of appellee, Myra Pearce Snead, and, on the same day, she executed a check for the entire proceeds of the note payable to her husband, and he indorsed the check and deposited it to his credit in the bank. On February 10, 1927, Mrs. Snead and her husband executed and delivered to the bank a note for $500, due four months after date, and the proceeds of this note were also placed to the credit of Mrs. Snead, and, on the same day, she executed a check payable to "Proceeds," which was indorsed by her husband and deposited by him to his credit in his own checking account. These two notes were renewed from time to time until September 29, 1930, when they were merged into the note sued upon. Shortly after the $3,000 note was executed, the National Bank of Kentucky was placed in the hands of a receiver, and on May 6, 1931, the payment of the note was extended for one year by the receiver in consideration of the deposit of 75 shares of common stock of the Dawson Daylight Coal Company as collateral security for the payment of same. When this suit was brought, the appellee, Myra Pearce Snead, defended on the ground that the original notes and all the renewals, including the $3,000 note executed September 29, 1930, were signed and executed by her as surety for her husband, Frank F. Snead, who was the principal in the notes, and therefore she was not liable under the provisions of section 2127 of the Kentucky Statutes, which reads in part:

"No part of a married woman's estate shall be subjected to the payment or satisfaction of any liability, upon a contract made after marriage, to answer for the debt, default or misdoing of another, including her husband, unless such estate shall have been set apart for that purpose by deed of mortgage or other conveyance; but her estate shall be liable for her debts and responsibilities contracted or incurred before marriage, and for such con-

tracted after marriage, except as in this act provided.''

Frank F. Snead made no defense, and judgment was entered against him for the amount of the note, subject to a credit of $835, the amount received from the sale of the stock held by the bank as collateral. As to Myra Pearce Snead, the case was tried before the court without the intervention of a jury on the issue of suretyship, and judgment was entered in her favor, and the receiver has appealed.

The purpose of the statute is to protect married women from liability as sureties of others, including their husbands, and in each case courts will look to the substance of the transaction and hold the wife not liable if it appears that her undertaking is in fact an attempted assumption of the debt of another. However, sections 2127 and 2128 of the Statutes recognize the right of a married woman to make contracts subject to certain exceptions not applicable here. She may borrow money on her own credit and execute her note therefor, Swearingen's Ex'r & Trustee v. Tyler, 132 Ky. 458, 116 S. W. 331, and she will be liable on the note although she borrowed the money for the use of another, Bogie v. Nelson, 151 Ky. 443, 152 S. W. 250. Many cases involving the question of suretyship of a married woman have been before this court, and in some of them she was held liable as principal and in others it was held that she was merely a surety and not liable. The decision in each instance was rested upon the particular facts of that case. In most of the cases in which the married woman was held to be a surety, she had executed a note for a pre-existing debt of her husband. This fact alone raises a presumption of suretyship. Among these cases are Clark County Nat'l Bank v. Allen, 262 Ky. 236, 90 S. W. (2d) 17; People's Bank v. Baker, 238 Ky. 473, 38 S. W. (2d) 225; Bank of St. Helens v. Mann's Ex'r, 226 Ky. 381, 11 S. W. (2d) 144; Brady v. Equitable Trust Co., 178 Ky. 693, 199 S. W. 1082; Deposit Bank of Carlisle v. Stitt, 107 Ky. 49, 52 S. W. 950. In other cases in which it was held the married woman was merely a surety, the facts disclosed that all parties to the transaction, including the lender of the money, knew that the substance of the transaction was a loan to the husband and that the wife was in truth his surety. Included in this class of cases

are Oatts v. First National Bank of Somerset, 244 Ky. 635, 51 S. W. (2d) 952; Simmons v. Maxey, 242 Ky. 728, 47 S. W. (2d) 530; Lucas v. Hagedorn, 158 Ky. 369, 164 S. W. 978; Hines & Co. v. Hays, 82 S. W. 1007, 26 Ky. Law Rep. 967. The statute does not prevent a married woman from borrowing money and giving or lending it to another, and the fact that the lender knows she intends to turn over the proceeds of the note to a third person does not convert her into a surety and relieve her of liability unless the transaction is a subterfuge or device to evade the statute. There is no evidence in the instant case tending to show any purpose to evade the provisions of the statute. Appellee's husband was a depositor of the National Bank of Kentucky, but the bank was unwilling to lend him the money he desired. It was willing to make the loans to appellee, and the credit in each instance was clearly extended to her. The proceeds of both the original notes were placed to her credit and she could then dispose of them as she saw fit. When the notes were renewed from time to time, she gave her check for the interest and executed renewal notes for the original amounts, thus indicating she considered herself primarily liable. The notes were not executed for the purpose of taking up antecedent debts of the husband. It is true that he had a small overdraft at the bank when each of the notes was executed, but they were inconsequential in amount and clearly had no bearing on the transaction and did not motivate the bank in making the loans.

In Smith v. First National Bank of Pikeville, 243 Ky. 716, 49 S. W. (2d) 538, two notes signed by Mrs. L. C. Smith were involved. The proceeds of the first note were placed to her credit, and were immediately checked out by her and credited to her husband's account. In holding the wife liable on this note, the court said:

"On August 7, 1919, her husband, L. C. Smith, came to the bank with a note for $1,250, signed by his wife, and dated August 5, 1919. The bank discounted the note, and placed the proceeds to her credit. The interest on the note was $25.26, and she was credited with the balance $1,224.74. He produced a check for $1,200 signed by her, which was on that day credited to his account and charged to her. She had drawn out of the bank all of the

money she had in bank before this, but, as shown by the account, she afterwards checked out from time to time in small amounts the $24.74. The $1,-250 note was renewed on December 5, 1919, she signing first and her husband second. It was again renewed in August, 1920, and signed in the same way.

"It is earnestly insisted for her that the form of the transaction was a mere subterfuge to cover the borrowing of the money by her husband. But the husband at that time owed the bank nothing. He had a small balance in the bank to his credit. She had a right to borrow money and lend it to her husband, if she wished to do so. She signed the papers at home, and her husband brought them to the bank, and there is nothing in the proof warranting the conclusion that it was anything more on her part than a lending of $1,200 to her husband, for the balance of the proceeds of the note was checked out by her. The statute [Ky. Stats. sec. 2127] must not be construed to prevent a wife from lending her husband money in this way if she wishes to do so, and, there being nothing in the proof to show that this was not the real transaction, the judgment of the circuit court cannot be disturbed."

In Scott v. First National Bank of Pikeville, 221 Ky. 297, 298 S. W. 949, 950, Mrs. Rusha Scott executed a note to the bank for $2,500, and, when sued, she defended on the ground that she was a married woman and had executed the note as surety for the Kentucky Elkhorn Coal Corporation, of which her husband was president. The coal company was indebted to the bank, and when it applied for an additional loan, the bank declined to make it on the ground that the company had exhausted its line of credit, and it also declined to make the loan to Mrs. Scott's husband on the ground that his credit was also exhausted. The loan was made to Mrs. Scott, and the proceeds of the note were placed to her credit on an account then opened. At the same time, her check to the coal company for the amount of the proceeds of the note was accepted and charged to her account and credited to the account of the coal company. The proceeds were not applied to the old indebtedness of the coal company, but were checked out

by it in the regular course of business. Mrs. Scott was held liable on the note, and, in the course of the opinion, it was said:

"Ordinarily it is hard for one to say 'No' when asked by a friend to become his surety. When the opportunities and responsibilities of business life were bestowed upon married women, it was thought that in their inexperience they would be particularly susceptible to such pleas and especially so when the one seeking assistance was the husband or a member of the family. It was believed that to require the surety's property to be placed in lien for the payment of the debt would cause such an one to hesitate and consider the matter before taking such action, and for their protection the act invalidates the suretyship unless this is done. This act has been given a liberal construction by the courts who do not permit its beneficent purpose to be frustrated by any subterfuge or artifice. And, whenever it appears that the real purpose of the transaction is to secure the debt of another, the statute is applied, regardless of the form of the paper which is executed. But, aside from this and some other exceptions not in point here, the statute recognizes the right of a married woman to borrow and loan money and to transact business generally, and, if she suffers in so doing, she must abide the consequences. Here the coal company needed additional funds to carry on its business; both it and its president were indebted to the bank to the limit, though it does not appear that at that time either was insolvent. The bank declined to loan either any more funds. Perhaps it wished to see the coal company continue in business; perhaps not, though Mr. and Mrs. Scott were so interested, and Mrs. Scott says she signed the note and check for that purpose, and constituted her husband her agent with full authority to act for her in their disposition. He negotiated the note at the bank, and had her check credited to that company's account, and it checked this out in the regular course of its business; no part of it being received by the bank except the interest discount, and it not being otherwise benefited. We may assume that the simultaneous receipt of Mrs.

Scott's note and check gave notice to the bank that she was making the loan to the coal company. But, in the absence of evidence of an ulterior purpose on the part of the bank, we are unable to see how this made the coal company the debtor of the bank in the loan or imputed bad faith to the latter in discounting the note. Mrs. Scott had the undoubted right to borrow money and to make a loan to the coal company, as well as to authorize her husband to act as her agent in the negotiation, and evidently this is what she intended to do.''

Other cases involving analogous facts in which married women were held liable on notes executed by them are: Tompkins v. Triplett, 110 Ky. 824, 62 S. W. 1021, 23 Ky. Law Rep. 305, 96 Am. St. Rep. 472; Cawood v. Madison Southern National Bank & Trust Co., 251 Ky. 637, 65 S. W. (2d) 734; Redmon v. First National Bank of Paris, 256 Ky. 659, 76 S. W. (2d) 933; Kelemen v. Citizens Bank of Cumberland's Liquidating Agent, 259 Ky. 292, 82 S. W. (2d) 355. These cases are controlling here, and it follows that the circuit court erred in rendering judgment for the appellee.

The judgment is reversed for a new trial in conformity with this opinion.