## Kann v. Peoples State Bank & Trust Co.

Nov. 23, 1945.

As Modified on Denial of Rehearing March 1, 1946.

Marcus C. Redwine for appellant.

V. W. Bush, D. L. Pendleton, and William Hays for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

. The appellant, and defendant below, Eleanor Horseman Kann, and one Hayden C. Horseman, were married in 1934. They resided in Winchester, Ky., where they lived together until 1943, when they were divorced, after which defendant married a man by the name of Kann, and she with her second husband thereafter resided in Columbus, Ohio. For the larger part of the married relation between appellant and her first husband, Hayden C. Horseman, he worked at a local retail store of the Kroger Grocer & Baking Company in Winchester, Ky., until 1934, a year or more preceding the separation and the divorce.

Appellant was the owner of considerable property consisting of several farms upon some of which oil was produced and from which she obtained royalties. She likewise owned personal property, and, to say the least, she was in what is known as comfortable circumstances, whilst her first husband owned no property whatever, except his necessary clothing. However, appellant made him the manager of all of her property, including her farms, which he operated as her agent, depositing the net proceeds, if any, to his credit in the Winchester Bank. His wife, appellant, also had an account in the same bank, but it appears that each of them issued checks against the different accounts. Appellant collected her oil and gas royalties and the rental from leased real estate, some of which was located in Winchester, and deposited the collections with the same bank to her account.

In 1934 Horseman concluded to abandon his employment with the Kroger Grocer & Baking Company and to enter into the private business of a retail grocer, but he, individually, was without means to acquire the necessary stock from wholesalers to prosecute that business. He thereupon applied to the Winchester Bank for a loan of $2,000, but it declined the requested loan on the ground that the applicant was wholly insolvent. The record discloses no objections on the part of appellant as Horseman's then wife to his embarking in the retail grocery business, but rather that she coincided with his determination to do so.

After the rejection of the proposed loan by the Winchester Bank the husband, accompanied by his wife, the appellant, appeared in the Bank with a note for $2,000 which he had executed to her, and both of them sought to negotiate it to the bank with the endorsement thereon of appellant, which the Bank accepted and put the amount of the proceeds to her credit. Following that transaction she issued her check to her husband against the deposited proceeds, and he acquired the stock of groceries for his contemplated store. Thereafter, the family, no doubt, obtained from it necessary groceries, and it was operated for about one year when it was sold by the husband, and with the proceeds of sale he made payment of $600 on his negotiated note for $2,000 thereby reducing it to $1,400. Later he obtained the balance due on that note ($1,400) from the appellee, and plaintiff below, Peoples State Bank & Trust Company, another bank in Winchester. That note was first signed by appellant (his wife) as principal with her husband as surety, but on some of the renewals thereafter made, it appears to have been signed by appellant alone, the last one of which is the one sought to be collected by this action filed in the Clark circuit court against appellant and her then husband, the latter of whom made no defense.

Appellant, in addition to a general denial, also defended on the ground that at the times of the transactions with both banks she was a married woman and that each of them was for the sole benefit of her husband, which each bank knew. On that hypothesis she then interposed the statute of limitations of seven years as applicable to a surety obligation. Under her defense of

general denial she denied in her testimony having signed the last renewal of the $1,400 note to appellee, which bore only her signature. Appellee then filed an amended petition in which it averred that if it were true that she had not signed that particular renewal then she was liable on a former renewal which she did sign, and it filed with that amendment such former renewal and, to which no defense of non est factum was made. The right of the appellee to substitute the last former genuine obligation, and seek recovery on it instead of the last one, to which non est factum was interposed, is sustained by a number of opinions of this court, among the first of which is, Bright v. First National Bank, 106 Ky. 702, 51 S. W. 442. It has been followed by this court continuously and without modification since then.

Since, therefore, the note sought to be recovered herein was executed less than seven years before the filing of the action the seven-year statute of limitations applicable to sureties disappears, leaving only the question to be determined by this court as is stated in appellant's brief wherein counsel truthfully says: "We can reduce all of the errors to one sentence: The facts as proved by both the plaintiff and defendant sustained the allegations of the defendant's answer, and therefore the appellant was entitled to a directed verdict in her behalf at the conclusion of all the evidence."

We fully agree with counsel that the sum total of the errors relied on could and should be reduced to that one sentence; but we disagree with him in his conclusion that the testimony sustains his contention that his client was entitled to a directed verdict at the conclusion of all the evidence. On the contrary, we approve the action of the court in directing a verdict for appellee for the unpaid amount of the indebtedness due it, the correctness of which is completely sustained by our opinion in the case of National Bank of Kentucky's Receiver v. Snead, 267 Ky. 816, 103 S. W. 2d 269, 270. In that case we reviewed all prior cases involving the question at issue herein. We recognized in that opinion the purpose of the statute rendering a wife's surety obligations invalid, except where she put her property in lien as security for the debt, and that the statute should be liberally construed in favor of the wife. However, we cited a number of prior cases in which the cases now

relied on by counsel for appellant were differentiated, and wherein we held that the transaction involved was one made primarily by the wife as principal, although the proceeds of which were obtained by her husband or by the one who it was alleged was the true principal in the obligation.

The facts in the Snead case are substantially, if not completely, identical with those appearing in this case, and the conclusion therein reached is supported by prior opinions of this court under substantially the same facts appearing in this case. In our opinion therein we said:

"In most of the cases in which the married woman was held to be a surety, she had executed a note for a pre-existing debt of her husband. This fact alone raises a presumption of suretyship. * * * The decision in each instance was rested upon the particular facts of that case. * * *

"She may borrow money on her own credit and execute her note therefor, Swearingen's Ex'r & Trustee v. Tyler, 132 Ky. 458, 116 S. W. 331, and she will be liable on the note although she borrowed the money for the use of another. Bogie v. Nelson, 151 Ky. 443, 152 S. W. 250." So say we in this case.

The original indebtedness, beginning with the transaction with the Winchester Bank, whereby appellant procured for and delivered to her husband $2,000 to enable him to embark in his new field of endeavor, though it knew of her purpose to turn the proceeds over to her husband, constitutes no defense to her individual obligation whereby such proceeds were obtained. So recognizing, the Snead opinion also says: "The statute does not prevent a married woman from borrowing money and giving or lending it to another, and the fact that the lender knows she intends to turn over the proceeds of the note to a third person does not convert her into a surety and relieve her of liability unless the transaction is a subterfuge or device to evade the statute. There is no evidence in the instant case tending to show any purpose to evade the provisions of the statute. Appellee's husband was a depositor of the National Bank of Kentucky, but the bank was unwilling to lend him the money he desired. It was willing to make the loans to

appellee, and the credit in each instance was clearly extended to her. The proceeds of both the original notes were placed to her credit and she could then dispose of them as she saw fit.''

Evidencing that the original obtention of the money from the Winchester Bank was one for the benefit of her then husband—who in the way indicated received the proceeds therefrom—and that it was her intention or purpose to so devote the proceeds, we take this from her testimony:

''Q. * * * You and Hayden (her first husband) at that time were living happily together? You both thought it was good for him to make this venture, he didn't have any money so you helped him, that is right isn't it? (Our parenthesis.) A. Yes.

''Q. Nothing wrong about that? A. No sir.

''Q. Because it didn't turn out just right that is no reason for you not paying it, is it? That's no reason for you not wanting to pay this note to the bank? A. There was no doubt in my mind when the money was borrowed for the store the store wouldn't bring as much as was borrowed. I thought the store, the stock would cover the amount.''

We have hereinbefore seen that the proceeds of the discounted $2,000 note were placed to the credit of appellant in the Winchester Bank and she then voluntarily turned over to her husband that amount which she did by issuing her check to him for deposit to his account. Therefore, under the express language quoted from the Snead opinion she does not come within the protection of the statute against her becoming surety on the note, since the obligation so created was her individual transaction, in an effort to aid and assist her husband in embarking upon his contemplated enterprise.

The judgment is affirmed.